STATE of Missouri, Respondent,

v.

Jahn Henri PARKER, Appellant.

No. 74794.

Supreme Court of Missouri,
En Banc.

Oct. 25, 1994.

As Modified on Denial of Rehearing
Nov. 22, 1994.

Melinda K. Pendergraph, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

BENTON, Judge.

A jury convicted Jahn Henri Parker of first degree murder. The trial court sentenced him to death. Parker filed a motion for post-conviction relief under Rule 29.15. On appeal, Parker raises 32 points of error. This Court has jurisdiction. *Mo. Const. art. V, § 3.* Affirmed.

## I.

This Court reviews the facts in the light most favorable to the verdict. *State v. Shurn*, 866 S.W.2d 447, 455 (Mo. banc 1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

On March 27, 1990, Parker—then on probation—assaulted Elizabeth Loesch. A hearing to consider revoking his probation due to the assault was scheduled for August 16, 1990. A few hours before that hearing, in the middle of the night, Parker had a friend drop him off at Loesch's house. Parker had been drinking. He had a small caliber gun. Parker told his friend, "I'm going to kill the bitch." At 7:00 a.m., police found Loesch's body. She had been shot four times with a .22 caliber gun.

That same morning, Parker told his girlfriend Lisa Anglo that he tried to shoot Loesch, but did not know if he succeeded. That afternoon, police found the gun that fired the fatal shots in Parker's boots in Anglo's garage. The next day, Parker told the police his prints were on the gun. When police asked whose fault the murder was, he said, "Well, I guess mine, part of it."

## II. Disclosure and Suppression Issues

### A. Police Personnel Records

Parker first argues that the trial court erred by limiting its review of personnel records of police officer witnesses. The trial court reviewed Officer White's file from March 27, 1990, to August 16, 1990, but declined to examine the rest of his file and denied any production of other officers' files.

Parker asserts that the trial court violated his rights to confrontation, compulsory process, due process, and freedom from cruel and unusual punishment. The compulsory process claim falls under the due process clause, and Parker cites no cruel and unusual punishment clause authority, so only the confrontation and due process claims need be addressed. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 107 S.Ct. 989, 1000–01, 94 L.Ed.2d 40 (1987).

The accused has the right "to be confronted with the witnesses against him." *U.S. Const. amend. 6; see also Mo. Const. art. I, § 18(a); State v. Hester*, 801 S.W.2d 695, 697 (Mo. banc 1991). The right to confront is satisfied if defense counsel receives wide latitude at trial to cross-examine witnesses; it does not include a right to pretrial disclosure of any and all information that might assist cross-examination. *Ritchie*, 480 U.S. at 53, 107 S.Ct. at 999. Parker's claim is only for pretrial disclosure of potentially helpful information; he does not assert that the trial court limited cross-examination. Thus, there was no confrontation clause violation.

Parker's due process claim invokes *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The government must turn over evidence in its posses-

sion that is favorable to the accused and material to guilt or punishment. *Id.* at 87, 83 S.Ct. at 1197. The defendant is not entitled to information on the mere possibility that it might be helpful, but must make "some plausible showing" how the information would have been material and favorable. *Ritchie,* 480 U.S. at 58 n. 15, 107 S.Ct. at 1002 n. 15, *quoting United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982).

■ Here, Parker has made no showing about the materiality or exculpatory nature of the files of officers, other than White. Of course, a personnel file *might* include helpful information. This mere possibility—unsupported by any facts—is insufficient under *Ritchie* to justify production of personnel files of officers other than White.

■ As to White, Parker grounds materiality in two statements Loesch made to her roommate Julie Niemeyer: (1) Loesch thought Officer White had been disciplined for failing properly to report Loesch's several complaints about Parker, and (2) Loesch had, in May or June 1990, read aloud a newspaper article stating that White was on probation. Given these assertions, the motion court subpoenaed White's personnel records from March 27, 1990 (when Parker assaulted Loesch) to August 16, 1990 (when Loesch was murdered) and reviewed them in chambers.

Parker claims this time window was too narrow. Mainly, he argues that White might have been disciplined for summarizing (after the fact) Loesch's several complaints in a September 5 memo, so the review period should have gone beyond September 5.

Parker's argument fails because it expands the inspection period well beyond his materiality showing. Both of Loesch's statements to Niemeyer asserted that White was *already on probation;* the motion court made an appropriate inspection, and found, "there have been *no* disciplinary actions taken against Officer White." This Court's review of the file inspected by the motion court reveals no disciplinary actions. Parker has presented only a theory—but no facts—that White *might* have been disciplined after

Loesch's death. Parker had full opportunity to obtain facts to support his theory when White testified at trial.

The motion court inspected all records within the scope of Parker's materiality showing, with a reasonable margin of time before and after. *Ritchie* requires no more than that. Point denied.

### B. Good-bye Letter

■ Parker next argues that the trial court erred in not granting a mistrial after Lisa Anglo testified that, on the night of the murder, Parker dictated a good-bye letter to Loesch's father saying he should have raised his daughter better. Parker alleges that the State had the letter before trial and violated Rule 25.03 and constitutional rights by not disclosing it.

■ When Anglo testified about the letter, Parker's counsel objected on two grounds: hearsay and evidence of uncharged crimes. The hearsay objection was immediately overruled. At a sidebar, the prosecutor told the trial court and Parker's counsel that Anglo would testify that the letter said, "You didn't do a very good job of raising your daughter." Parker's counsel responded, "On that representation, I withdraw the objection." The next day, however, Parker moved for mistrial, due to the letter. Thus, review is for plain error. *Rule 30.20.* To prevail on plain error review, Parker must show that the trial court's error so substantially violated his rights that manifest injustice or a miscarriage of justice results if the error is not corrected. *State v. Hornbuckle,* 769 S.W.2d 89, 92–93 (Mo. banc), *cert. denied,* 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989).

The record reveals that the prosecutor did not know about the letter before Anglo testified. When Parker moved for mistrial, the trial court asked the prosecutor if he knew of the letter (before trial). He said he did not. Thus, there was no failure to disclose the letter before trial. Assuming Parker's counsel was surprised at trial and needed time to respond to unexpected testimony, the proper remedy was continuance, not mistrial. *State v. Biel,* 169 S.W.2d 375, 376 (Mo.1943); *State v. Brass,* 781 S.W.2d 565, 566 (Mo.App.1989).

The trial court committed no plain error in denying a mistrial.

### C. Suppression of Parker's Statements

Parker next argues that the motion court violated his Fifth and Sixth Amendment rights to counsel by failing to suppress statements he made to police.

About two hours after Loesch's body was found, Parker appeared with counsel at the probation revocation hearing concerning the previous assault on Loesch. His probation was revoked; he began serving a 90-day sentence.

The next day, two officers took him from the jail to an interview room. Parker received *Miranda* rights. He said he understood the rights and wanted to talk to the officers, but refused to sign the waiver form. After making incriminating statements, Parker said he "ought to talk to an attorney." The officers left the room; Parker was alone. Within five minutes, Parker opened the door, walked out, and said he wanted to speak to one of the officers, by name. That officer re-entered the room and repeated the *Miranda* warnings. Parker again said he understood his rights and wanted to talk. After making more statements, he undisputedly asked for an attorney. The officers ended the interview.

Parker first argues that his Sixth Amendment right to counsel was violated because his lawyer *in the probation revocation hearing and underlying assault* was not notified before questioning *about the murder* began.

 The Sixth Amendment right to counsel attaches when an adversary judicial proceeding is commenced by, for example, a charge, preliminary hearing, indictment or information. *Davis v. United States,* —— U.S. ——, ——, 114 S.Ct. 2350, 2354, 129 L.Ed.2d 362 (1994); *State v. Beck,* 687 S.W.2d 155, 160 (Mo. banc 1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). Once the right has been invoked, subsequent waiver during a police-initiated custodial interview is invalid. *Michigan v. Jackson,* 475 U.S. 625, 635, 106 S.Ct. 1404, 1410–11, 89 L.Ed.2d 631 (1986). This Sixth Amendment right is offense-specific; it can-

not be invoked for future prosecutions. *McNeil v. Wisconsin,* 501 U.S. 171, 174–76, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991).

 Here, Parker's Sixth Amendment right to counsel for the murder of Loesch had not attached because formal proceedings had not begun. Any right to counsel in the probation revocation proceeding or underlying assault did not transfer to this case. *See McNeil,* 501 U.S. at 176–77, 111 S.Ct. at 2208. Thus, there was no Sixth Amendment violation.

 Parker also claims a Fifth Amendment violation on the theory that the police did not cease questioning when Parker first requested counsel. The Fifth Amendment right is triggered when an accused in custody "unambiguously" requests counsel. *Davis v. United States,* —— U.S. at ——, 114 S.Ct. at 2355. After an unambiguous request, interrogation must stop until counsel is made available or the accused "initiates further communication, exchanges, or conversations with police." *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981).

 Here, the motion court made no finding that Parker invoked his right to counsel. Neither Parker's refusal to sign the waiver form, nor his statement that he "ought" to talk to a lawyer, unambiguously invoked his right to counsel. Even if Parker did invoke the right, he promptly initiated further communication by voluntarily calling an officer back into the room. Thus, there was no Fifth Amendment violation.

### D. Suppression of Gun and Boots

 Parker argues that the trial court erred when it admitted the gun used to murder Loesch, Parker's boots (containing the gun), and other evidence because it was illegally seized. Specifically, Parker contends that Anglo did not voluntarily consent to the search of her garage, where the evidence was found.

Parker did not raise *Anglo's* consent in his motion to suppress nor at trial, but argued there that *he* did not consent. Thus, review is for plain error. *Rule 30.20.* At the sup-

pression hearing, the evidence showed that Anglo consented in writing to the search of her garage. Parker presented no evidence of involuntariness. At trial, in fact, more evidence of voluntary consent was presented. Anglo's voluntary consent validates the search. *United States v. Matlock*, 415 U.S. 164, 170–71, 94 S.Ct. 988, 992–93, 39 L.Ed.2d 242 (1974). Point denied.

### III. Jury Issues

#### A. Venire Police Records

■ Parker argues that the trial court abused its discretion in denying a mistrial when—contrary to a pretrial agreement and court order—the State failed to disclose one venireperson's arrest record.

Parker moved that the State not obtain arrest records of venirepersons, largely because Parker would not have equal access to these non-public records. One prosecutor agreed to turn over any records found. The State searched for convictions, not arrests, on three venirepersons. Two had no record. A third, who served on the jury, had been arrested for forgery and received a suspended imposition of sentence.[1] The State did not use the arrest information because that person was the only black in the venire and the State wanted to avoid any *Batson* issues. The State concedes that it failed to comply with its agreement to turn over arrest records, but asserts that the error was inadvertent and nonprejudicial.

Parker suffered no prejudice. He makes no showing nor offers any theory why a juror with a forgery arrest would be biased against him. Common sense suggests that such a juror would advantage—not disadvantage—the defendant. Moreover, the State derived no benefit from the arrest record because it did not use the information to challenge any juror.

■ Parker makes a separate ineffective-assistance-of-counsel claim regarding the arrest records, apparently claiming that trial counsel should have questioned venireper-

sons about arrest and conviction records. Parker cannot prevail on an ineffective-assistance claim without showing what a reasonable trial counsel would have done, plus prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Parker has made no showing that reasonable counsel would have questioned the venire, and has articulated no theory of prejudice. Point denied.

#### B. Denial of For–Cause Challenges

Parker alleges that venirepersons Gibbs and Steele were biased, and that the trial court erred in overruling Parker's for-cause challenges to them. Parker removed both with peremptory challenges.

■ The trial court has broad discretion to determine the qualifications of prospective jurors. *State v. Feltrop*, 803 S.W.2d 1, 7 (Mo. banc), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). Only clear abuse of discretion and a real probability of prejudice justify reversal. *Id.* The critical question in a bias challenge is whether the venireperson unequivocally indicated an ability to evaluate the evidence fairly and impartially. *Id.* Bias is a factual question, which turns largely on the demeanor of the venireperson. *State v. Leisure*, 749 S.W.2d 366, 372 (Mo. banc 1988).

■ Gibbs initially indicated that he would find police officers more credible because their experience would make them pay extra attention to details. He then testified that he "would be sure to" weigh an officer's credibility the same as any other witness, and not give the officer more credibility. This unequivocal statement established Gibbs as an unbiased venireperson, and the trial court did not abuse its discretion in refusing to strike him for cause.

■ Parker asserts two bias grounds regarding Steele. First, Parker argues that Steele equated four shots with deliberation. Steele actually stated that four shots fired by one person was evidence of first degree mur-

1. The State's brief incorrectly identifies this juror. The venire included Judy Hicks, who served on the jury, and Glenn Hicks, struck by Parker. The State's brief—by referring to Hicks as a "venireman" and alleging that the person subject to the search did not serve on the jury—clearly references *Glenn*. In fact, the record is clear that the State searched the record of *Judy*.

der, that he would "be open to other considerations other than murder in the first degree," and that four shots was not, by itself, sufficient for first degree murder. These statements established Steele as an unbiased venireperson.

■ Second, Parker argues that Steele's friend's conviction for first degree murder caused bias. Steele testified that he did not think his friend was guilty of first degree murder, but he believed he could put the memory of the conviction out of his mind. Parker did not raise this claim in his motion to strike Steele, so review is for plain error. *Rule 30.20.* There is no manifest injustice because (1) Parker makes no showing why the friend's conviction would bias Steele toward the State; (2) Steele testified that he could put the conviction out of his mind; and (3) Steele did not serve on the jury. Point denied.

### C. Removal of Venireperson

Parker next argues that the trial court violated his right to a fair trial by removing venireperson Huseman because of her views on the death penalty.

■ A defendant's Sixth Amendment right to an impartial jury is violated when the trial court excuses venirepersons for cause merely because they express objections to the death penalty. *Wainwright v. Witt,* 469 U.S. 412, 416, 105 S.Ct. 844, 848, 83 L.Ed.2d 841 (1985); *State v. Harris,* 870 S.W.2d 798, 805 (Mo. banc), *cert. denied,* — U.S. —, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). A venireperson may be removed for cause if his or her views would substantially impair the ability to perform a juror's duty in accordance with the instructions and oath. *Wainwright,* 469 U.S. at 425–26, 105 S.Ct. at 852–53; *Harris,* 870 S.W.2d at 805. Appellate courts review for-cause rulings only for abuse of discretion. *Harris,* 870 S.W.2d at 805–06.

■ Venireperson Huseman first said she could never consider the death penalty, then said she would "lean" toward life. She repeated that she could not impose a death sentence and also said she could not judge someone else. In response to defense coun-

sel's questions, she said she could "consider" the death penalty. On these facts, the trial court did not violate the Sixth Amendment in sustaining the State's for-cause challenge to Huseman. *See State v. Bannister,* 680 S.W.2d 141, 146 (Mo. banc 1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985) (upholding for-cause challenge where venireperson twice said he could never impose death penalty, but "equivocated somewhat" in response to counsel's questions). Point denied.

### D. Refusal to Strike

Parker next argues that the trial court violated his right to a fair trial by overruling his for-cause challenge to venireperson Brandt, alleging that Brandt would automatically apply the death penalty. Parker later struck Brandt by peremptory challenge.

■ A prospective juror who will automatically vote for the death penalty upon a finding of guilt must be removed for cause upon a challenge from the defendant. *Morgan v. Illinois,* — U.S. —, —, 112 S.Ct. 2222, 2229–30, 119 L.Ed.2d 492 (1992). Empaneling such a juror violates the right to an impartial jury. *Id.* at —, 112 S.Ct. at 2230.

■ Here, the record reveals that venireperson Brandt would not automatically apply the death penalty. She stated that she favored the death penalty, but also that she could "definitely" follow the court's instructions and would consider a life sentence even if aggravating circumstances were proved beyond a reasonable doubt. On this record, the trial court did not abuse its discretion in declining to excuse Brandt. Point denied.

### E. Second Questionnaire

Parker contends that the trial court erred when it denied his motion to submit a second questionnaire to the venire, given the trial court's two-day limit on voir dire, because: (1) a questionnaire is more accurate than oral questioning for certain issues, and (2) two days' voir dire was inadequate.

■ Control of voir dire is within the discretion of the trial court; only abuse of discretion and likely injury justify reversal.

*State v. Bannister,* 680 S.W.2d 141, 145 (Mo. banc 1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985). There is no constitutional right to conduct voir dire by questionnaire; indeed, oral voir dire is preferred because it reveals credibility. *State v. Morehouse,* 811 S.W.2d 783, 785 (Mo.App. 1991); *see State v. Leisure,* 749 S.W.2d 366, 373 (Mo. banc 1988). Thus, Parker's first argument fails.

 At trial, Parker made no objection to the length of voir dire nor did he request additional time. Thus, review of Parker's claim that voir dire was too short is for plain error. *Rule 30.20.* Even now, Parker's only assertion of prejudice is the conclusion that "two days was not a sufficient amount of time to explore the sensitive issues [about interracial relationships]." This mere conclusion is insufficient to establish manifest injustice. Point denied.

### F. Individual Voir Dire

 Parker next argues that the trial court erred in conducting voir dire in panels, not individually, because certain venirepersons gave disqualifying responses "that were bunched together." Individual voir dire is not required. *State v. Ervin,* 835 S.W.2d 905, 917 (Mo. banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); *State v. McMillin,* 783 S.W.2d 82, 94–95 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). Review of the record reveals no abuse of discretion by the trial court in excusing the venirepersons Parker references. *See Wainwright v. Witt,* 469 U.S. 412, 416, 105 S.Ct. 844, 848, 83 L.Ed.2d 841 (1985); *State v. Harris,* 870 S.W.2d 798, 805 (Mo. banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). Point denied.

### G. Non–MAI Cautionary Instruction

 Parker argues that the trial court should have submitted a non-MAI cautionary instruction before death qualification. The proposed instruction indicated that death qualification questions are mandatory and do not imply guilt. The trial court read to the jury MAI–CR3d 300.02, which states that the charge of any offense creates no inference that any offense was committed nor that the defendant is guilty, and that the defendant is presumed innocent until found guilty. This Court has already rejected this claim. *State v. Kilgore,* 771 S.W.2d 57, 63 (Mo. banc), *cert. denied,* 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989). Point denied.

### H. Second Jury or Two–Stage Voir Dire

 Parker argues that the trial court violated constitutional rights by denying motions to empanel a second jury for the penalty phase or reopen voir dire. Parker's theory is that he could not conduct voir dire on penalty phase issues without tainting the jury about guilt. This Court has rejected any constitutional entitlement to a separate penalty-phase jury. *State v. Whitfield,* 837 S.W.2d 503, 509 (Mo. banc 1992). The trial court has discretion to control voir dire and will be upheld absent abuse of discretion and likely injury. *State v. Bannister,* 680 S.W.2d 141, 145 (Mo. banc 1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985). This Court finds neither abuse of discretion nor likely injury from the trial court's denial of two-stage voir dire.

### I. Signing Death Verdict

 Parker asserts abuse of discretion by the trial court's permitting questions asking jurors whether they could serve as foreperson or sign a death verdict. Parker argues that the questions sought a commitment from venirepersons and misled them about the law. Such questions are proper; the trial court did not abuse its discretion in permitting them. *Clemmons v. State,* 785 S.W.2d 524, 529 (Mo. banc), *cert. denied,* 498 U.S. 882, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990).

## IV. Guilt Phase Issues

### A. Violation of Pretrial Order

Before trial, the court ordered the State not to elicit certain hearsay statements by Loesch or certain evidence of other crimes. Parker asserts that the forbidden evidence was presented, and that the trial court erred in denying a mistrial.

Loesch's roommate testified that she and Loesch were followed in a car. She could not identify the person following them, but testified, "I was told it was Jahn Parker." The court sustained a hearsay objection and instructed the jury to disregard the statement, but denied Parker's motion for a mistrial.

A mistrial is a drastic remedy, granted only in extraordinary circumstances. *State v. Feltrop*, 803 S.W.2d 1, 9 (Mo. banc), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). Because the trial court observes the testimony and its impact, appellate review is only for abuse of discretion. *Id.* Instructing the jury to disregard the identification of Parker was an adequate remedy, and the trial court did not abuse its discretion in denying Parker a mistrial.

Parker also seeks a mistrial based on the roommate's identification of Parker on the night of the murder. Twice, *before* any response was given, the trial court sustained Parker's objections to questions. Once, the trial court instructed the jury to disregard the hearsay identification. Parker did not seek a mistrial, so review is for plain error. *Rule 30.20*. Since the jury was instructed to disregard the only statement it heard, there was no manifest injustice.

Parker's next attack concerns testimony by Anglo. She was describing Parker's appearance and behavior on the morning after the murder, then said, "[Parker] was talking about needing to be at court and needing a ride to court that morning." After an unrelated question and response, Parker's counsel asked for a mistrial on the ground that Anglo's statement was evidence of other uncharged crimes.

Evidence of unrelated crimes is prejudicial because it may result in a conviction for crimes not charged. *State v. Trimble*, 638 S.W.2d 726, 732 (Mo. banc 1982), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983). But here, Parker mischaracterizes Anglo's testimony. Her statement gave no evidence of an uncharged crime because there was no indication *why* Parker was going to court. For all the jury knew, he could have been going to court for an innocent reason (to testify, serve as a juror, or observe court). Thus, the trial court did not err in denying Parker's motion for a mistrial.

### B. Closing Argument

Parker asserts that the State's closing argument improperly commented on his silence, and that trial court erred in overruling his objection. The contested argument concerned the reason Parker's interrogation was not videotaped, while some witness statements were. It reads:

> Defense Attorneys says, "Why don't we have a videotape?" Well, the police told you why you don't have a videotape. There is a procedure. The procedure was followed with Alva Lewis. It was followed with Lisa Anglo. It was followed with the Defendant. Ask them the questions. If they're willing to make a statement, you complete that statement. Ask them if they can go back over the statement and videotape it to preserve that for evidence. The Defendant has rights, and if the Defendant asks for an attorney, they can no longer be questioned. And that's what happened in this case. When he said—

Parker's counsel then objected. The court overruled the objection because Parker had raised the lack of a videotape in his closing; the State's argument was therefore retaliatory.

A prosecutor has considerable leeway to make retaliatory arguments at closing. *State v. Mease*, 842 S.W.2d 98, 109 (Mo. banc 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993). A defendant may not provoke a reply to his own argument and then assert error. *State v. Morris*, 662 S.W.2d 884, 890 (Mo.App.1983). Here, the prosecution was merely answering the defense's question (why wasn't Parker videotaped?) with facts (Parker stopped the interrogation by requesting an attorney) that were in evidence and never objected to.

Elsewhere in his brief, Parker argues plain error by the trial court because it did not, *sua sponte*, order a mistrial when the prosecutor in closing argument characterized the victim as a mother, daughter, friend, and roommate. Parker's failure to

object at trial waives this claim. *State v. Wise,* 879 S.W.2d 494, 516 (Mo. banc 1994). Gratuitous review reveals any error was harmless beyond a reasonable doubt. Point denied.

### C. Reasonable Doubt Instructions

■ Parker argues that Instruction 4—identical to MAI–CR3d 302.04—and Instruction 12—identical to MAI–CR3d 313.30—violate due process. The challenged language reads: "Proof beyond a reasonable doubt is proof that leaves you firmly convinced...." This claim has been consistently rejected. *State v. Harris,* 870 S.W.2d 798, 811 (Mo. banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). Point denied.

### D. Voluntary Intoxication Instruction

■ Parker next contends that the trial court plainly erred by submitting Instruction 6—identical to MAI–CR 310.50:

In determining the defendant's guilt or innocence, you are instructed that an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct.

Parker argues that this instruction relieved the State of its burden to prove his mental state.

In *State v. Erwin,* 848 S.W.2d 476, 481–84 (Mo. banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993), this Court held that MAI–CR3d 310.50 violates due process. The *Erwin* holding was limited to cases tried in the future and cases subject to direct appeal where the issue had been preserved. *Id.* at 484; *State v. Wise,* 879 S.W.2d 494, 519 (Mo. banc 1994). This case was tried before *Erwin,* and Parker concedes he did not preserve the issue. Gratuitous review reveals that error, if any, was harmless beyond a reasonable doubt. *See Wise,* 879 S.W.2d at 519.

■ Parker makes a second attack, contending that the prosecutor improperly argued the instruction in closing. Parker suffered no prejudice from this closing argument because the prosecutor expressly stated that *the State* had to prove that Parker acted with the required mental state.

■ Parker makes a third attack, arguing that trial counsel's failure to object to Instruction 6 when offered was ineffective assistance of counsel. To prevail, Parker must show (1) trial counsel's performance was unreasonable given all circumstances; and (2) there is a reasonable probability that, but for the error, the result would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984).

■ When Parker was tried, Instruction 6 was valid. *State v. Erwin,* 848 S.W.2d at 483. Trial counsel's performance is evaluated by reference to the law existing at the time of trial; failure to predict a change in the law is not ineffective assistance. *Johnson v. Armontrout,* 923 F.2d 107, 108 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 106, 116 L.Ed.2d 75 (1991). Parker's trial counsel was not ineffective by failing to anticipate the change in the law made by *Erwin.*

### E. Second Degree Murder Instruction

■ Parker argues that Instruction 9—based on MAI–CR3d 313.04—encourages a decision for first degree murder and is unconstitutional. Instruction 9 reads in part:

If you do not find the defendant guilty of murder in the first degree, you must consider whether he is guilty of murder in the second degree.

Parker concedes that no objection was made to Instruction 9 and review is for plain error.

This challenge to MAI–CR3d 313.04 was rejected in *State v. Wise,* 879 S.W.2d 494, 517 (Mo. banc 1994). MAI–CR3d 313.04 does not require acquittal of first degree murder in order to consider second degree; a jury deadlocked on first degree can consider second degree murder. *Id.* Therefore, the coercive effect of an "acquittal first" instruction—if any—does not exist under 313.04. *Id.*

■ Parker also argues that the prosecutor improperly argued at closing that the jury must find Parker not guilty of first degree murder before considering second degree. Granted, the prosecutor once misspoke, using "acquittal first" language when

discussing Instruction 9. But just before that misstatement, the prosecutor twice used the precise language of Instruction 9. Appellate review of plain error claims in closing argument is limited because interrupting counsel actually increases the risk of error. *State v. Wise,* 879 S.W.2d at 516. Therefore, any errors not objected to are waived. *Id.* Gratuitous review shows that the prosecutor's isolated misstatement was not prejudicial because the instruction itself was proper. *Zafiro v. United States,* —— U.S. ——, ——, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993) ("juries are presumed to follow their instructions").

## V. Penalty Phase

### A. Assault Evidence

Parker asserts that the trial court plainly erred when it permitted the State to elicit details of a sexual assault on Michelle Canole by Parker.

In October 1988, Parker was charged with third degree sexual abuse and third degree misdemeanor assault, from a single incident with Canole. Parker pleaded guilty to the misdemeanor assault charge (for striking her in the face with his hand); the sexual abuse charge was then dropped. Here, the State submitted Parker's guilty plea as a nonstatutory aggravating factor. Parker now asserts that the trial court should have (*sua sponte,* because no objection was made) prevented Canole from testifying about the sexual abuse.

■ In general, at penalty phase the State and defense may introduce any evidence regarding the defendant's character. *State v. Six,* 805 S.W.2d 159, 166–67 (Mo. banc), *cert. denied,* 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991). Imposing the death penalty is the most serious decision society makes about an individual, and the sentencer is entitled to any evidence that assists in that determination. *State v. Debler,* 856 S.W.2d 641, 656 (Mo. banc 1993). Accordingly, evidence detailing the circumstances of prior convictions submitted as nonstatutory aggravating factors is admissible at the penalty phase. *Id.* at 656–57.

■ Parker tries to invoke *Debler* to exclude Canole's testimony about sexual abuse. The portion of *Debler* cited by Parker dealt only with extensive evidence of uncharged acts wholly separate from any crime submitted as an aggravating circumstance. *Id.* at 657. Canole's testimony was admissible, and the trial court committed no error—plain or otherwise—in admitting it.

■ Parker also asserts error in admitting photographs of Canole's face. The trial court has broad discretion to determine admissibility of photographs. *State v. Isa,* 850 S.W.2d 876, 890 (Mo. banc 1993). The photographs here could have helped the jury understand the circumstances of Parker's assault charge for hitting Canole in the face, and so the trial court did not abuse its discretion. *Id.*

### B. Victim's Statements

Parker contends that the trial court erred in overruling his objection to Regina Frosheiser's testimony repeating statements made by the victim a week before her murder. Parker contends the statements were hearsay, not admissible under any exception, and violated his rights to due process, confrontation, and freedom from cruel and unusual punishment. Frosheiser testified only at penalty phase.

Frosheiser testified that she had conversations with Loesch about a week before her murder. Before Frosheiser could repeat Loesch's statements, the following exchange took place:

MS. GRADY: Judge, I'm sorry. I'm going to object at this time. Hearsay.

MR. CALLAHAN: Being offered to show the state of mind of Beth Loesch at the time immediately prior to the—

MS. GRADY: I don't believe state of mind is a hearsay exception.

THE COURT: The objection is overruled. Any statements that the victim may have said prior to her death may be considered only to reflect the state of mind that she had at that time.

Frosheiser then testified that Loesch said:

1) Parker is "not what he appears to be"

2) Parker is "dangerous"

3) Parker "had assaulted her and she had pressed charges against him"

4) a court hearing on the assault was approaching

5) Parker "told her that he would kill her before he would go to jail again"

6) she was "very afraid" of Parker

7) she was carrying in her car a baseball bat and knife for protection.

■ The first issue is whether Parker preserved constitutional claims about Frosheiser's testimony. To preserve appellate review, constitutional claims must be made at the first opportunity, with citations to specific constitutional sections. *State v. Smith*, 781 S.W.2d 761, 775 (Mo. banc 1989), *vacated*, 495 U.S. 916, 110 S.Ct. 1944, 109 L.Ed.2d 306 (1990), *aff'd on remand*, 790 S.W.2d 241 (Mo. banc), *cert. denied*, 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990); *State v. Flynn*, 519 S.W.2d 10, 12 (Mo.1975). A hearsay objection does not preserve constitutional claims relating to the same testimony. *State v. Root*, 820 S.W.2d 682, 685 (Mo.App.1991); *see also State v. Smith*, 781 S.W.2d at 775. Because Parker's trial counsel made only a hearsay objection, his constitutional claims are not reviewable. This Court's review is limited to gratuitous plain error review.

■ A hearsay statement is any out-of-court statement used to prove the truth of the matter asserted. *State v. Shurn*, 866 S.W.2d 447, 457 (Mo. banc 1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). The prosecutor expressly offered Frosheiser's testimony to show Loesch's state of mind (not for the truth of the matters asserted). The trial court admitted it only for state of mind, and so instructed the jury. Thus, Frosheiser's testimony was not hearsay, and the trial court committed no error—plain or otherwise—in overruling Parker's hearsay objection.

■ Since Frosheiser's testimony was not hearsay, it is admissible if relevant. *State v. Shurn*, 866 S.W.2d at 457. Evidence is relevant if it logically tends to prove a fact in issue. *Id.* No relevance objection was made, so review is for plain error. *Rule 30.20.*

■ Parker's claims as to several of the statements can be rejected because error—if any—was harmless beyond a reasonable doubt. Four statements—Parker was not what he appears to be, Parker was dangerous, Parker had assaulted Loesch and she had pressed charges, and a court hearing on the assault was approaching—were not prejudicial because the same evidence was already in the record when Frosheiser testified. Michelle Canole had already testified that in October 1988, Parker forced her to remove her pants, sexually assaulted her, pulled her hair, and hit her face with his fist. Her testimony was ample evidence that Parker was "dangerous," and "not what he appears to be." The prosecutor in Parker's March assault on Loesch had already testified about the assault, the filing of charges, and the approaching hearing, and the assault charge and motion to revoke probation were in evidence. Thus, any error as to these four statements was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

■ The remaining three statements require further analysis. The United States Supreme Court has long recognized that the circumstances of the crime are relevant at sentencing:

For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender.

*Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 S.Ct. 59, 61, 82 L.Ed. 43 (1937). Indeed, consideration of the circumstances of a particular crime is "a constitutionally indispensable part of the process of inflicting the penalty of death." *Tuilaepa v. California*, —— U.S. ——, ——, 114 S.Ct. 2630, 2637, 129 L.Ed.2d 750 (1994), *quoting Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). The circumstances of a crime include evidence of the specific harm caused by the defendant, especially the effect of the crime

on the victim. *Cf. Payne v. Tennessee*, 501 U.S. 808, 826–28, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991). Jurors are free to consider the circumstances of the crime at sentencing. *Tuilaepa*, — U.S. at —, 114 S.Ct. at 2637. The "circumstances of the crime" include the victim's state of mind, particularly whether "the defendant made the victim endure the terror of anticipating a violent death...." *Tuilaepa*, — U.S. at —, 114 S.Ct. at 2642–43, (Blackmun, J., dissenting). The instructions here stated this well-established law by directing the jury to consider, in deciding whether to impose the death penalty: "All of the evidence relating to the murder of Elizabeth Loesch." *Instruction 17.*

■ The three statements that Parker was going to kill Loesch, she was very afraid, and was carrying a baseball bat and knife "relate to the murder" because they show the victim's state of mind: she endured the terror of anticipating death at Parker's hands. The fact that Loesch's terror predated the murder by a week does not make it irrelevant. The trial court did not plainly err in admitting such evidence at penalty phase. *Tuilaepa*, — U.S. at —, 114 S.Ct. at 2637.

■ Finally, Parker contends that the evidence was really admitted for the truth of the matter asserted because the prosecutor so argued it at closing. The trial court expressly admitted Frosheiser's testimony only for the victim's state of mind and instructed the jury properly; the prosecutor's closing argument cannot alter the trial judge's ruling. Thus, Parker's real claim is that the prosecutor misargued the testimony at closing. No objection was made, so any error is waived. *State v. Wise*, 879 S.W.2d 494, 516 (Mo. banc 1994). Gratuitous plain error review reveals no manifest injustice because the trial court properly instructed the jury to consider Frosheiser's testimony only for the victim's state of mind at the time she made the statement. One unobjected-to misstatement by the prosecutor does not constitute manifest injustice where the jury is properly instructed. *See Zafiro v. United States*, — U.S. —, —, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993).

### C. Self–Representation

Parker argues that the trial court plainly erred by failing to conduct a hearing after Parker questioned the quality of his representation during the penalty phase.

Parker asked for and received permission to approach the bench shortly after Loesch's deposition—offered by his counsel—had been read. He disagreed with his counsel's decision to introduce that deposition. After a recess where Parker and counsel conferred, Parker told the court that testimony by two doctors (whom the defense later called) about Parker's mental health was "irrelevant." At no time did Parker ask to represent himself or that his lawyers be dismissed.

■ A criminal defendant has a constitutional right to represent himself. *Faretta v. California*, 422 U.S. 806, 836, 95 S.Ct. 2525, 2541–42, 45 L.Ed.2d 562 (1975); *State v. Gilmore*, 697 S.W.2d 172, 174 (Mo. banc 1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986). Absent a clear and unequivocal assertion of the right to self-representation, the trial court is obligated neither to permit self-representation nor to conduct a hearing. *Reese v. Nix*, 942 F.2d 1276, 1280 (8th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1220, 117 L.Ed.2d 457 (1992). Here, Parker never asked to represent himself. He merely informed the court of his disagreement with strategic matters left to counsel. Point denied.

### D. Victim Impact Evidence

Parker contends that the trial court erred by admitting a photograph of the victim and her daughter, and failing to grant a mistrial after the victim's father testified:

A. ... The tension has been incredible. I just know that we're very concerned what happens.

Q. You are referring to the trial.

A. Yes, sir.

■ The United States and Missouri constitutions permit victim impact evidence at the penalty phase. *Payne v. Tennessee*, 501 U.S. 808, 826–28, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991); *State v. Wise*, 879 S.W.2d 494, 515 (Mo. banc 1994). Victim

impact evidence illustrates the harm from the murder; there is nothing unfair about permitting the jury to consider that harm, along with defendant's mitigating evidence. *Payne,* 501 U.S. at 826–28, 111 S.Ct. at 2609. Victim impact evidence violates the constitution if it is so "unduly prejudicial that it renders the trial fundamentally unfair." *Payne,* 501 U.S. at 824–26, 111 S.Ct. at 2608; *Wise,* 879 S.W.2d at 516.

As to the photograph, Parker argues that since it was not recent, it inaccurately described the age of Loesch's daughter. The trial court has wide discretion to determine the admissibility of photographs. *State v. Isa,* 850 S.W.2d 876, 890 (Mo. banc 1993). Admitting the photograph was not an abuse of discretion.

Parker argues that the victim's father's testimony goes beyond the evidence permitted in *Payne.* That case expressly permits evidence "relating to the victim and the impact of the victim's death on the victim's family;" it expressly declined to determine the admissibility of "a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence." *Payne,* 501 U.S. at 830 n. 2, 111 S.Ct. at 2611 n. 2. Parker, somehow, would turn the father's statement of concern about the trial into a comment on the jury's verdict. It is not. Rather, tension and concern about the trial is evidence "relating to the impact of the victim's death on the victim's family"—clearly admissible under *Payne.* Point denied.

### E. Cross–Examination of Doctor

Parker argues that the trial court committed plain error in violation of his constitutional rights by permitting cross-examination of Dr. Logan (Parker's mental health expert) about sexual assaults by Parker.

On direct examination in mitigation, Logan testified that evidence suggested Parker had borderline personality disorder and a sexual deviation. Logan based this conclusion on, among other things, Parker's history of forced sex with women, his "preoccupation" with forced sex, and Parker's abusive and threatening relationships with women. On cross-examination, the prosecutor questioned Logan about the facts supporting his opinion, including sexual assaults.

An expert witness may be cross-examined about facts not in evidence to test the validity of his opinion. *State v. Goree,* 762 S.W.2d 20, 23 (Mo. banc 1988). Prosecutors have wide latitude in cross-examining psychological experts because the factual basis for psychiatric testimony is particularly important. *State v. Darnell,* 858 S.W.2d 739, 747 (Mo.App.1993). Since Parker himself offered as mitigation his sexual history, the prosecution could cross-examine Parker's expert to test the validity of his opinion. The record reveals that the cross-examination of Logan did not go beyond permissible limits. Point denied.

### F. Closing Argument

Parker asserts that the trial court plainly erred in permitting improper arguments at penalty phase closing. Parker's counsel objected to none of them. Appellate review of assertions of plain error in a prosecutor's closing pressures trial courts into "uninvited interference with summation and a corresponding increase in the risk of error by such intervention." *State v. Wise,* 879 S.W.2d 494, 516 (Mo. banc 1994), *quoting State v. Clemmons,* 753 S.W.2d 901, 907–08 (Mo. banc), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). Thus, any errors not objected to are waived. *State v. Wise,* 879 S.W.2d at 516; *State v. McMillin,* 783 S.W.2d 82, 98 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). Gratuitous review reveals no plain error.

### G. Aggravating Circumstances

Parker alleges that the trial court erred in overruling his motion to strike certain aggravating circumstances in Instructions 15 and 16—based on MAI–CR3d 313.40 and .41 respectively—and in submitting those instructions to the jury.

To impose the death penalty, the jury had to find at least one of the statutory aggravating circumstances in *§ 565.032*

*RSMo Supp.1991.* Instruction 15 listed two statutory aggravators:

> Whether Elizabeth Loesch was a potential witness in a pending prosecution of a probation violation action against Jahn Henry Parker in the Circuit Court of Boone County, Missouri, cause number 180CT8820297, and was killed as a result of her status as a potential witness.

> Whether Elizabeth Loesch was a potential witness in a pending prosecution against Jahn Henry Parker in the Circuit Court of Boone County, Missouri, cause number 03MAY90225478, and was killed as a result of her status as a potential witness.

Both were based on *§ 565.032(2)(12) RSMo Supp.1991,* which sets forth the following aggravating circumstance:

> The murdered individual was a witness or potential witness in any past or pending investigation or past or pending prosecution, and was killed as a result of his status as a witness or potential witness;

First, Parker claims that there was insufficient evidence to submit the statutory aggravators in Instruction 15. The jury found only the second aggravator in Instruction 15, so Parker's argument is limited to that aggravating circumstance.

In October 1988, Parker received probation for striking Michelle Canole. On March 27, 1990, Parker assaulted Loesch. Prosecutors filed assault charges and a motion to revoke Parker's probation from the Canole case. Parker and prosecutors made a plea agreement on the Loesch assault. Parker agreed to (1) plead guilty to violating probation and (in that proceeding) admit assaulting Loesch, and (2) plead guilty to the actual assault on Loesch. On the morning Loesch's body was found, Parker performed the first part of the agreement; he appeared in court, pleaded guilty to violating probation, and admitted assaulting Loesch. He received a 90-day sentence. Parker contends that the plea agreement eliminated any potential gain to him from killing Loesch, and thus the aggravator based on Loesch's status as a potential witness should not have been submitted.

Parker's argument ignores the word "potential" in the statute and Instruction 15. Under both, killing a *potential* witness is an aggravating factor. Despite the agreement with prosecutors, Loesch was still a *potential* witness on the assault charge when she was murdered. That charge was still pending, and events could have prevented enforcement of the agreement. For example, Parker might have refused to plead guilty or the judge could have rejected the agreement. In either case, Loesch's testimony would have been necessary. Since Loesch remained a potential witness on the assault charge even after the plea agreement, there was sufficient evidence to submit Instruction 15.

Parker's second attack is on Instruction 16, which permitted the jury to consider a misdemeanor conviction and guilty plea as further aggravating circumstances once it had found a statutory aggravator. He contends that permitting the jury to consider misdemeanors fails to direct and limit the sentencer's discretion as required.

 True, the sentencer's discretion must be limited to prevent arbitrary and capricious infliction of the death penalty. *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932–33, 49 L.Ed.2d 859 (1976); *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Missouri law requires the jury find beyond a reasonable doubt one or more of the statutory aggravators (in *§ 565.032.2 RSMo Supp.1991* ) before the defendant can be sentenced to death. *§ 565.030.4 RSMo 1986.* Nonstatutory aggravators (such as the misdemeanors here) are relevant only after finding a statutory aggravator. *Id.* This process prevents arbitrary sentencing and is constitutional. *State v. Wise,* 879 S.W.2d 494, 524 (Mo. banc 1994). Point denied.

### H. Refusal of Non–MAI Instruction

██ Parker asserts error because the trial court refused his non-MAI Instruction C—listing 21 nonstatutory mitigating factors—and instead submitted Instruction 18, modeled on MAI–CR3d 313.44. Parker himself offered Instruction 18, and may not turn around and challenge it. *State v. McMillin,* 783 S.W.2d 82, 97 (Mo. banc 1990), *cert.*

*denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). Nonetheless, this Court will review for plain error. *Rule 30.20.*

■ Parker's first attack is that listing nonstatutory mitigators is required, at least where nonstatutory aggravators are listed. Parker theorizes that not listing mitigators misleads the jury by not detailing the specific mitigating factors they may consider. His second attack is that Instruction 18's statement that jurors "may consider" mitigating circumstances implies that they may refuse to consider such circumstances, in violation of *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). Both arguments have been rejected by this Court. *State v. Debler,* 856 S.W.2d 641, 655 (Mo. banc 1993); *State v. Wacaser,* 794 S.W.2d 190, 195 (Mo. banc 1990). Point denied.

### VI. Post–Conviction Relief

#### A. Rule 29.15 Time Limits

Parker asserts that the time limits in Rule 29.15 deprived him of due process, equal protection, and effective assistance of counsel, and constitute cruel and unusual punishment. This argument has been repeatedly rejected. *State v. Ervin,* 835 S.W.2d 905, 929 (Mo. banc 1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). Parker offers no reason to reconsider. Point denied.

#### B. Assistance of Counsel

■ Parker claims that the motion court erred in denying post-conviction relief for ineffective assistance of counsel. To prove ineffective assistance, the defendant must show that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and that the defendant was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Wise,* 879 S.W.2d 494, 524 (Mo. banc 1994). To prove prejudice, the defendant must show a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Shurn,* 866 S.W.2d 447, 468 (Mo. banc 1993), *cert. denied,* — U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Trial strategy is not a ground for ineffective assistance of counsel. *Id.*

■ Here, the motion court found that counsel was not ineffective, so review is limited to determining if the court clearly erred. *Rule 29.15(j); Wise,* 879 S.W.2d at 524. Findings and conclusions are clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite impression that a mistake has been made. *Shurn,* 866 S.W.2d at 468–69.

*1.*

■ Parker raises two preliminary allegations. He first argues that he and his counsel had irreconcilable differences, alleging that he and counsel "disagreed about the defense," and that one of his lawyers made decisions "without regard for Mr. Parker's feelings." To prevail on a claim of irreconcilable differences with counsel, the defendant must produce objective evidence of a "total breakdown in communication" between the defendant and counsel. *State v. Hornbuckle,* 769 S.W.2d 89, 96 (Mo. banc 1989), *cert. denied,* 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989). Parker's vague assertions of disagreement and disregard of feelings do not meet this burden. The record reveals no evidence of a breakdown in communication, even when Parker complained to the trial court about counsel's trial strategy.

■ Parker also alleges that his attorneys had a conflict of interest which violated his Sixth Amendment rights. To establish a conflict claim, a defendant who raised no objection at trial—like Parker—must demonstrate that an actual conflict adversely affected his lawyer's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). Conflict of interest normally arises where one attorney represents multiple defendants whose interests diverge. Even assuming that the doctrine applies to individual representation, Parker has produced no facts demonstrating a conflict. Point denied.

**2.**

As stated in section V.G., Parker had agreed to plead guilty to an earlier assault on Loesch. Parker contends that counsel was ineffective in failing to investigate that agreement and counter it with testimony by Betty Wilson, Parker's attorney in the assault case. Parker argues primarily that Wilson could have discounted Loesch's status as a potential witness by testifying about the plea agreement, Parker's knowledge of it, and Parker's appearance at court on August 16.

Defense counsel's decision not to call Wilson was not ineffective assistance. First, counsel interviewed Wilson and consciously decided not to call her. One of Parker's attorneys testified that Wilson was not called to avoid disclosing privileged information or other bad evidence; the other did not remember a reason. Strategic decisions not to call witnesses are not ineffective assistance of counsel.

Second, defense counsel explored the plea agreement by cross-examining the prosecutor in the original assault case. Failing to present cumulative evidence is not ineffective assistance of counsel. *State v. Twenter,* 818 S.W.2d 628, 636 (Mo. banc 1991).

Third, Wilson would not have helped Parker; Loesch was still a potential witness when murdered because Parker had not yet pleaded guilty and the judge had yet to accept his plea. Wilson's testimony could not have altered the fact that Loesch was murdered *before* the plea agreement was performed or accepted. Point denied.

**3.**

Parker next argues that his counsel was ineffective in closing arguments at guilt and penalty phases.

Regarding guilt phase closing, Parker highlights trial counsel's post-conviction testimony that he was unprepared for closing, wrongly predicted the evidence the State would submit, failed to make several intended points, suffered stage fright, and shortened the argument because the jury did not believe it.

Review of this closing argument reveals that counsel underscored weaknesses in the police investigation, challenged the credibility of prosecution witnesses, contested the existence of deliberation, and attacked the validity of damaging statements made by Parker to police. Counsel testified that he intentionally abandoned some planned arguments because they were not persuading the jury and he did not want to lose credibility.

On this record, the motion court did not clearly err in denying post-conviction relief. Counsel's decision not to argue points was a plausible strategic decision based on his judgment about what was convincing the jury. Second-guessing strategic decisions is not grounds for an ineffective assistance claim. *See State v. Ramsey,* 864 S.W.2d 320, 340 (Mo. banc 1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994). Moreover, Parker has failed to show any probability that a better argument would have changed the result. Indeed, the motion court found that the evidence of guilt was compelling and that any attorney would have had a difficult time making a convincing argument against the first degree murder charge.

Parker also argues that penalty phase closing argument was ineffective, contending merely that counsel's statements were "not clear and concise," that counsel referred to notes and "could not complete statements and thoughts," and did not "summarize witnesses' testimony." These flaws on this record are insufficient to state an ineffective assistance claim. In fact, counsel attacked the State's aggravating circumstances and highlighted mitigating aspects of Parker's background. Point denied.

**4.**

Parker next argues that counsel's decision to present no defense was ineffective assistance.

Parker proffers evidence that would define Parker's relationship with Loesch, showing that they loved each other. This evidence might have—according to Parker— shown absence of motive or deliberation. Parker's trial counsel testified that he knew

the State had potentially damaging evidence of Parker stalking Loesch, and testified that he anticipated that evidence would be introduced at guilt phase. When it was not, Parker's counsel made the strategic decision not to inject the Parker–Loesch relationship for fear of opening the door to the damaging stalking evidence. Strategic decisions to call or not call witnesses provide no basis for an ineffective assistance claim.

■ Parker also claims ineffective assistance because counsel failed to call witnesses Eng and Anglo. These claims were not raised in Parker's first amended 29.15 motion nor in the points in his primary brief to this Court; they are therefore barred. *State v. Twenter,* 818 S.W.2d 628, 641 (Mo. banc 1991). Gratuitous plain error review reveals no ineffective assistance beyond a reasonable doubt from counsel's decision not to call these witnesses.

### 5.

■ Parker next asserts that counsel was ineffective in (1) failing to call Officer Anderson at the suppression hearing to explore a statement in Anderson's report that Parker was questioned after invoking his right to counsel, and (2) failing to object to Anderson's testimony during the guilt phase.

At the suppression hearing, two police officers testified about Parker's statements to police. The motion court found the officers credible, and concluded that Parker received his rights and voluntarily waived them. The record fully supports this finding.

Parker has the burden to prove that counsel's error changed the result. Yet, during post-conviction proceedings he has produced no hint of how Anderson's suppression testimony might change the result, or what was damaging about his trial testimony. Indeed, Anderson's report—on which Parker now relies so heavily—has not even been admitted for its contents. Thus, the record contains no evidence supporting Parker's claim. Point denied.

### 6.

■ Parker next argues that counsel was ineffective at guilt phase in its cross-examination of witnesses Lewis, Blythe, Henderson, Himmel, and Anglo.

As to Lewis, Parker contends that cross-examination was too short, "did little to attack his credibility," and suffered in comparison to the cross-examination of Lewis at the preliminary hearing. As to Officers Blythe, Henderson and Himmel, Parker argues that his counsel enhanced their credibility by emphasizing their training. As to Anglo, Parker asserts that counsel failed to elicit "her bias and motive to lie" and that she "had never seen Parker with a gun." These assertions fail to show how a reasonable counsel would have cross-examined the witnesses or that a different cross-examination would have changed the result. *See Roberts v. State,* 775 S.W.2d 92, 95 (Mo. banc 1989), *cert. denied,* 494 U.S. 1039, 110 S.Ct. 1506, 108 L.Ed.2d 640 (1990).

### 7.

■ Parker contends that penalty phase counsel was ineffective in introducing the victim's deposition because it contained evidence of uncharged crimes by Parker. True, the deposition had damaging aspects, but it also contained substantial mitigating evidence. As Parker himself said in his first amended 29.15 motion, "this deposition shed some light on the length and nature of the relationship between [Parker] and Ms. Loesch and gave some evidence of the contradictory impulses under which Ms. Loesch labored...." Counsel's decision to introduce evidence that both helps and hurts is a question of trial strategy. Point denied.

### 8.

■ Parker contends that penalty phase counsel was ineffective in presenting testimony from two doctors that Parker had a personality disorder that caused him to assault women. This testimony was designed to show that Parker was under extreme emotional disturbance when he committed the murder, a submitted mitigating circumstance. In support of this conclusion, the doctors testified about Parker's family's long history of problems, Parker's substance abuse and intoxication, and other potentially mitigating factors. Penalty phase counsel

testified that defense lawyers are instructed at seminars to introduce such evidence.

The mental defense testimony was double-edged, both mitigating and damaging. Whether to pursue any particular defense is a strategic decision for trial counsel. Point denied.

### 9.

■ Parker next argues that trial counsel failed to conduct adequate voir dire by (1) arguing with and lecturing one venireperson, (2) failing to rehabilitate two others, and (3) not asking questions about the intoxication instruction. Parker offered no evidence on this point other than the transcript. Thus, he failed to meet his burden to show what a reasonable voir dire would have been or that the result of the trial would have been different. Point denied.

### 10.

■ Parker next contends that counsel was ineffective because counsel denied him the right to testify. The record reveals that three times, the trial court informed Parker that he had the right to testify; each time Parker said he understood. Twice the court asked Parker if he wanted to testify; both times he—not his counsel—said no. Thus, the motion court's finding that "[Parker] was explained his right to testify or not to testify and that he decided not to testify" was not clearly erroneous. Point denied.

### 11.

■ Parker argues that counsel was ineffective in failing to object to victim impact evidence presented by the victim's father. See section V.D. above. Victim impact evidence is generally admissible, and was properly admitted here. See Payne v. Tennessee, 501 U.S. 808, 826–28, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991). Failing to object to admissible evidence is not ineffective assistance of counsel. Point denied.

### 12.

Finally, Parker argues that counsel should have objected to the testimony of Dr. Adelstein, a pathologist who testified about the sequence of gun shots. This point was not raised in Parker's first amended motion, and is therefore waived. State v. White, 873 S.W.2d 590, 594 (Mo. banc 1994). Point denied.

### C. Post–Conviction Counsel

■ Parker asserts that he was abandoned and received ineffective assistance by post-conviction counsel, despite that counsel's filing a timely 29.15 motion constituting 216 pages of motion, argument, and appendices. Parker's real argument is that post-conviction counsel "did not do everything which might have been done," which (even if true) does not constitute abandonment. Pollard v. State, 807 S.W.2d 498, 502 (Mo. banc), cert. denied, —— U.S. ——, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991). Parker's claim that he received ineffective assistance by post-conviction counsel is not cognizable. State v. Shurn, 866 S.W.2d 447, 472 (Mo. banc 1993), cert. denied, —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Point denied.

### D. Summary Judgment

Parker next argues that the motion court erred in granting the State summary judgment on post-conviction claims because: (1) summary judgment is not available in 29.15 proceedings, and (2) the motion court failed to make findings of fact and conclusions of law.

■ Rule 29.15 provides that the motion court can dismiss claims without a hearing where "the motion and the files and records of the case conclusively show that the movant is entitled to no relief." Rule 29.15(g); State v. Blankenship, 830 S.W.2d 1, 16 (Mo. banc 1992). The motion court shall issue findings of fact and conclusions of law on all issues presented, including those dismissed without hearing. Barry v. State, 850 S.W.2d 348, 350 (Mo. banc 1993); Rule 29.15(i).

■ Parker argues that the motion court failed to make the required findings and conclusions. The findings of fact and conclusions of law must be specific enough to permit meaningful appellate review. Barry, 850 S.W.2d at 350. Here, the court's memo-

randum decision disposing of post-conviction issues stated:

> [T]his Court entered summary judgment as to claims II, IV, V, XXI, XXII, XXIII, of the first amended motion and claim VII of the pro se motion as these claims were either not cognizable in this proceeding or upon the record were clearly unsupported by existing law.[2]

Though not a paradigm of specificity, this finding and conclusion is sufficient to permit appellate review, and therefore meets the minimum acceptable standard. Appellate review is limited to determining whether the findings and conclusions are clearly erroneous. *Barry,* 850 S.W.2d at 350.

Other than general attacks on the applicability of summary judgment and the adequacy of the motion court's findings and conclusions, Parker alleges error only in the dismissal of Claim XXII. Claim XXII contends that the last paragraph of Instruction 19—based on MAI–CR3d 313.44—violates constitutional rights because jurors might have understood it to require a unanimous finding of a mitigating circumstance before mitigating circumstances could be weighed against aggravating circumstances. This argument has been repeatedly rejected. *State v. Shurn,* 866 S.W.2d 447, 466 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Point denied.

### E. Adopting State's Findings and Conclusions

Parker argues that the motion court committed plain error in violation of the due process and cruel and unusual punishment clauses by adopting the prosecutor's proposed findings of fact and conclusions of law.

 Contrary to Parker's assertion, the record does not establish that the motion court "signed a memorandum denying relief drafted by the prosecutor." The record shows a letter from the prosecution transmitting a proposed memorandum decision, but does not include the proposed decision itself. The next item in the record is a memoran-

dum decision. Thus, Parker has failed to provide a record supporting his assertion. Moreover, there is no constitutional violation where a judge signs findings and conclusions proposed by a party as long as the findings and conclusions reflect the judge's independent judgment. *State v. White,* 873 S.W.2d 590, 600 (Mo. banc 1994).

### VII. Constitutional and Proportionality Issues

#### A. Constitutionality of Death Penalty

Parker argues that the Missouri death penalty scheme is unconstitutional because it serves no legitimate state interest, prosecutors have discretion whether to seek the death penalty, and this Court's proportionality review is inadequate. These arguments have been consistently rejected. *State v. Wise,* 879 S.W.2d 494, 524 (Mo. banc 1994). Parker offers no reason to reconsider; his claims are denied.

#### B. Proportionality Review

 This Court must determine (1) whether the jury imposed death "under the influence of passion, prejudice or any other arbitrary factor," (2) whether the jury's finding of statutory aggravating factors is supported by the evidence; and (3) whether the sentence is excessive or disproportionate to similar cases. § 565.035.3 RSMo 1986.

Parker presents a threshold question. After briefing, Parker moved to file "Experts' Analysis of the Court's Proportionality Data." The State did not oppose the motion, and the data is accepted for filing. The data consists of three statistical analyses of Missouri death penalty cases.

It does not appear, however, that the data aids in conducting a proportionality review. *Cf. Lockhart v. McCree,* 476 U.S. 162, 168–73, 106 S.Ct. 1758, 1762–65, 90 L.Ed.2d 137 (1985). Proportionality review "merely provides a backstop against the freakish and wanton application of the death penalty."

---

**2.** The fact that this finding and conclusion was not in the order granting summary judgment on the listed claims, but rather, was in the subsequent order resolving all post-conviction claims, is irrelevant because there is no requirement that findings and conclusions on the non-hearing issues be made before those on the hearing issues. *See Rule 29.15(i).*

*State v. Ramsey,* 864 S.W.2d 320, 328 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994). The issue in proportionality review is "not whether any similar case can be found in which the jury imposed a life sentence, but rather, whether the death sentence is excessive or disproportionate in light of 'similar cases' as a whole." *State v. Shurn,* 866 S.W.2d at 468.

In any event, the Court has considered the data in its review of this case. On this record, there is no evidence of passion, prejudice or other arbitrary factors. As determined above, significant evidence supported the victim's status as a potential witness, the statutory aggravating factor the jury found.

This Court has approved sentences of death where the defendant murdered the victim because of the victim's status as a witness: *State v. Shurn,* 866 S.W.2d at 466–68 (aggravating circumstance was victim's status as potential witness in pending prosecutions of killer's brothers); *State v. Davis,* 814 S.W.2d 593, 606 (Mo. banc 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 911, 116 L.Ed.2d 812 (1992) (one of two aggravating circumstances was that the defendant murdered the victim because she was a witness in a pending prosecution); *State v. Six,* 805 S.W.2d 159, 169 (Mo. banc), *cert. denied,* 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991) (aggravating circumstance was that the defendant killed the victim because the victim could identify him); *State v. Petary,* 781 S.W.2d 534, 544 (Mo. banc 1989), *vacated and remanded,* 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990), *reaffirmed,* 790 S.W.2d 243 (Mo. banc), *cert. denied,* 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990) (aggravating factor that the defendant killed the victim because of the victim's status as a witness); *State v. Boliek,* 706 S.W.2d 847, 851 (Mo. banc), *cert. denied* 479 U.S. 903, 107 S.Ct. 302, 93 L.Ed.2d 276 (1986) (aggravating circumstance that the defendant killed the victim intending to eliminate a witness); *State v. Gilmore,* 661 S.W.2d 519, 525 (Mo. banc 1983), *cert. denied,* 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984) (aggravating circumstance that the defendant murdered the victim to prevent the victim from testifying in judicial proceeding); *State v.*

*Williams,* 652 S.W.2d 102, 113 (Mo. banc 1983) (the defendant murdered the victim to eliminate the victim as a witness); *State v. Blair,* 638 S.W.2d 739, 758–60 (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983) (upheld capital murder conviction of a defendant paid by a third party to murder the victim because the victim was a potential witness).

This Court concludes that the penalty imposed in this case is not excessive nor disproportionate to the penalties imposed in similar cases, considering the crime, the evidence, and the defendant.

## VIII.

This court affirms the judgments.

All concur.