STATE of Missouri, Respondent,

v.

Darrell HUSE, Appellant.

Darrell HUSE, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 17402, 18002.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 15, 1992.

Ellen H. Flottman, Columbia, for appellant.

William L. Webster, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

MONTGOMERY, Presiding Judge.

Darrell Huse (Defendant) was convicted upon jury trial on the charge of second degree murder, in violation of § 565.021.-1(1), RSMo 1986. The amended information alleged Defendant "knowingly or with

the purpose of causing serious physical injury to Britain Ogle caused the death of Britain Ogle by striking him." Following the jury's recommendation, the court sentenced Defendant to life imprisonment. His direct appeal to this Court alleges the trial court erred in the following respects:

(1) By failing to sustain his motion to suppress his statements to Deputy Sheriff Neil because his statements at the Jasper County Jail were fruit of the poisonous tree since they followed his custodial and unmirandized interrogation by Neil at Defendant's home;

(2) By admitting evidence of anal injuries to Britain Ogle which compelled the Defendant to defend against an uncharged crime of sodomy;

(3) By admitting into evidence a photograph depicting the anal area of Britain Ogle either because it was irrelevant or its probative value was outweighed by its prejudicial effect;

(4) By refusing to admit into evidence certain letters that were probative to show another baby-sitter of Britain Ogle had a proclivity towards anal intercourse; and

(5) By giving Instruction 4, patterned after MAI–CR 3d 302.04, defining reasonable doubt since the definition given allows conviction upon a lesser degree of proof than allowed by the due process clause.

We affirm the judgment of the trial court.

On January 1, 1990, Kima Ogle was living with Defendant and her three children in a trailer home near Carthage, Missouri. She worked at the X–Press Truck Stop near her trailer where Defendant often cared for her children while she worked. Britain Ogle, her youngest son, was six months old at the time of his death. On January 1, 1990, Ogle went to work at 2:00 p.m., leaving her children in the care of Defendant. Before leaving, Ogle bathed Britain and changed his diaper. She saw no bruises nor anything unusual about his rectal area.

Defendant came to the truck stop on at least three occasions that afternoon on various errands. At 8:00 p.m. that evening, he brought Britain, wrapped in a blanket, to the truck stop and said, "We have to go.... I can't get Britain to wake up." Defendant laid Britain on a countertop while Ogle called an ambulance and Ogle's fellow employee administered CPR to the baby.

After delivery to the hospital Britain was declared dead. There, numerous bruises, at different stages of healing, were observed over Britain's body. His anal area was dilated, torn and bruised.

On January 2, 1990, Deputy Sheriff Neil attended the autopsy on Britain. The results of the autopsy revealed the cause of death was a large laceration to the spleen which caused massive hemorrhaging. The rupture was caused by an external blow to the abdominal cavity. A large bruise was observed in the left lower quadrant of Britain's abdomen. The bruise was consistent with an injury caused by an open hand in a jabbing motion.

Following the autopsy, Deputy Sheriff Neil stated he had a suspect and was going to interview him. The deputy later explained Defendant was one of the suspects he had in mind. Upon arrival at the Ogle trailer, Neil asked Defendant the whereabouts of Britain's mother. He was informed she was lying on the couch where Neil observed her vomiting. Neil learned that a number of her relatives were on the way to the trailer. At that point Neil asked Defendant the location of the baby's room and "if they had a curling iron" (because of a burn mark on the baby). Because of the illness of Ogle and her relatives coming to the trailer Neil asked Defendant to come to the sheriff's office for questioning. Defendant asked Neil for a ride to the sheriff's office since he had no car and Neil accommodated him. No Miranda[1] warnings were given to Defendant at the trailer.

Upon arrival at the jail, Defendant was fully advised of his Miranda rights, whereupon he gave both a written and taped statement. Defendant stated he had be-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

come frustrated with the baby and "did get rough with the baby." In order to stop the baby from "pooping," Defendant stated he inserted his finger in the baby's rectum, picked up the baby and squeezed him and jabbed the baby's stomach with his fingers. Defendant denied sodomizing the baby. After his statements, Defendant was placed under arrest.

### APPEAL NO. 17402 (Direct Appeal)
### I.

Defendant contends his unmirandized questioning at the trailer constituted custodial interrogation, and his statements at the sheriff's office should be suppressed "as fruit of the poisonous tree."

■ When reviewing a trial court's ruling on a motion to suppress, the inquiry is limited to whether the court's decision is supported by substantial evidence and deference is given to the trial court's superior opportunity to determine credibility of witnesses. *State v. Johns,* 679 S.W.2d 253, 261 (Mo. banc 1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985).

■ The issue presented under this point is whether the interrogation of Defendant at the trailer was a "custodial interrogation," thereby entitling Defendant to Miranda warnings prior to any questioning. "Custodial interrogation" is defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise been deprived of his freedom of action in any significant way. *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612.

In *State v. Feltrop,* 803 S.W.2d 1 (Mo. banc 1991), the defendant maintained the trial court erred in denying his motion to suppress on the same grounds as Defendant asserts here. The facts in *Feltrop* surrounding defendant's confession are strikingly similar to those here. In *Feltrop,* the defendant's live-in girlfriend was brutally murdered. Defendant was contacted by Sgt. Speidel in response to a request from the St. Charles County Sheriff's Office for an interview. After talking with Sgt. Speidel, defendant followed him to the station where defendant waited for the St. Charles County officers to arrive. Upon arrival, those officers asked defendant about his relationship with the victim, why he reported her missing, and where he thought she might be. They asked defendant if he was a Christian and whether he would tell the truth. Defendant then told the officers "he had 'tried to take the knife away.'" *Id.* at 12. At that point Miranda warnings were given and waived by defendant. Questioning then resumed and defendant gave his version of the killing. Based on the foregoing facts, the Supreme Court found no error in the trial court's denial of the motion to suppress. The Court said:

> At all times prior to his making the incriminating statement, appellant was free to depart. Even assuming appellant was a suspect in the minds of the officers, there is no custodial interrogation when a suspect is questioned when not under arrest or otherwise restrained of his liberty. *Oregon v. Mathiason,* 429 U.S. 492, 494–95, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977). Furthermore, in the absence of arrest or restraint of freedom of movement, questioning that takes place in a coercive environment does not require *Miranda* warnings.

*Id.* at 13.

In the instant case, Defendant was not under arrest at the trailer nor was his freedom restrained in any way. It was Defendant who asked Neil for a ride to the sheriff's office, thereby indicating Defendant knew his freedom was unrestrained. Furthermore, the minimal questioning of Defendant at the trailer was in a less coercive environment than Defendant's questioning at the police station in *Feltrop.*

■ At the most, the questions asked of Defendant at the trailer were investigatory in nature, and a person is not in custody when he is simply being asked investigatory questions by the police. *State v. Calmese,* 628 S.W.2d 382, 387 (Mo.App. 1982). In addition, custodial interrogation does not exist where the person is not a suspect in the crime. *State v. Mouser,* 714 S.W.2d 851, 855 (Mo.App.1986). The trial court had substantial evidence to believe

Defendant was not a suspect in this case when Neil went to the trailer. Neil testified at the suppression hearing he went to the trailer "just doing an investigation." At that time, Neil had the possibility of several suspects in mind such as all baby-sitters. Neil was unaware of the persons who had cared for the baby. He denied any intent to arrest the baby-sitter caring for the child at the time of his death because such arrest would have been "premature" without further investigation.

Suspect or not, Defendant was not in custody at the trailer and he was not entitled to any Miranda warnings. The trial court's denial of Defendant's motion to suppress was based upon substantial evidence.

## II.

Defendant believes the trial court erroneously admitted evidence of anal injury sustained by Britain because such evidence implied the crime of sodomy had been committed by Defendant.

Absent a clear abuse of discretion, an appellate court will not interfere with the trial court's ruling on the admission or exclusion of evidence. *State v. Urban*, 798 S.W.2d 507, 516 (Mo.App.1990). A trial court enjoys broad discretion in ruling on the admission or exclusion of evidence offered by the parties at trial. *Id.*

■ Generally, evidence of commission by defendant of crimes separate and distinct from the crime for which he is charged is inadmissible. *State v. Mallett*, 732 S.W.2d 527, 534 (Mo. banc 1987), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). "But such evidence is generally admissible to prove the crime charged when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial." *Id.* It is also well established that when admissible evidence is inseparable from evidence which implicates defendant in another crime, the evidence is usually admissible in its entirety. Whether evidence is inseparable is left to the sound discretion of the trial court. *State v. Hampton*, 278 Ark. 629, 648 S.W.2d 162, 166 (Mo.App.1983). The state may paint a complete picture of the crime charged and need not sift and separate the evidence. *State v. Whitman*, 788 S.W.2d 328, 337 (Mo.App.1990).

■ Here, it was alleged Defendant knowingly or with the purpose of causing serious physical injury to Britain, caused his death by striking him. The evidence revealed numerous bruises over the baby's body, including evidence that the baby's anal area was torn, bruised and dilated. Although Defendant admitted he inserted his finger in the baby's rectum, Dr. Nelson, the emergency room physician who attended Britain, testified he had never seen such rectal injuries from the insertion of a finger.

We find no abuse of discretion because evidence of the rectal injuries tended to establish Defendant's intent to cause serious physical injury, i.e., he knew or was aware his conduct was likely to lead to the death of a six-month-old baby. A picture of Britain's death could not be painted without showing all the bruises and injuries received by Britain. Neither was the State required to sift and separate those bruises and injuries. *Whitman*, 788 S.W.2d at 337.

## III.

Defendant argues the trial court abused its discretion in admitting a gruesome photo of Britain's anal injuries because it was either irrelevant or its probative value was outweighed by its prejudicial effect.

■ A trial court has broad discretion in determining the admissibility of photographs, and such admission is error only upon a showing of an abuse of discretion. *State v. Kincade*, 677 S.W.2d 361, 366 (Mo.App.1984). We find no abuse of discretion here.

■ Photographs are generally admissible if they are relevant to any material issue. *State v. Murray*, 744 S.W.2d 762,

772 (Mo. banc 1988), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988). Photographs, although gruesome, may be admissible where they show the nature and location of wounds, enable the jury to better understand the testimony and where they aid in establishing any element of the state's case. *Id.*

■■■ The photograph here shows Britain's anal area was dilated, torn and bruised. This photograph enabled the jury to better understand the testimony of the baby's mother, Kima Ogle, and that of Dr. Nelson. The mother testified she changed the baby's diaper shortly before 2:00 p.m. on the day in question and observed nothing unusual about the rectal area. That night, Dr. Nelson observed severe rectal injuries which apparently occurred while the baby was in the care of Defendant. According to Dr. Nelson it was most unlikely such injuries resulted from insertion of a finger as Defendant admitted. For these reasons, the photograph was relevant and admissible.

"If a photograph is relevant, it should not be excluded because it may be inflammatory, unless the situation is so unusual that the extent of the prejudice overrides the photograph's probative value." *Murray*, 744 S.W.2d at 772. The photograph here is no more inflammatory than the photographs in *Feltrop* which showed the murdered victim's torso in a trunk and the body parts in a garbage bag. There, the court determined the photographs were properly admitted. 803 S.W.2d at 10–11. We conclude the situation here is not that unusual, and any prejudice resulting from the admission of the photograph did not exceed its probative value. "[G]ruesome crimes produce gruesome, yet probative, photographs." *Id.* at 11. Defendant has failed to show any abuse of discretion by admission of the photograph.

## IV.

■■■ Under this point, Defendant contends the trial court erred in refusing his offer of proof concerning numerous letters written between Sonny Joe Denton and James Meltenberger because the letters were probative to the defense theory that Meltenberger sodomized Britain. The letters were indicative of Meltenberger's proclivity toward anal intercourse.

Denton and Meltenberger baby-sat with Britain and his siblings the night before Britain's death. Both of them testified for the defense at trial, and both stated no one injured Britain nor did anything inappropriate to him. Their testimony was substantiated by Britain's mother who diapered the baby the following day about 2:00 p.m. and observed no bruises or injuries to Britain's rectal area.

As we understand Defendant's theory, the letters raised the possibility that Meltenberger, not Defendant, sodomized Britain. As part of Defendant's offer of proof, the trial court read all the letters which indicated Denton was Meltenberger's girlfriend. The letters were written between them and apparently exchanged while Meltenberger was serving time in jail. In general, the letters revealed the sexual desires of each author towards the other. The trial court observed none of the letters described any misconduct towards Britain and sustained the State's motion in limine to exclude the letters. Defendant was allowed complete freedom to question Denton and Meltenberger concerning their knowledge of Britain's death.

In support of this point, Defendant relies on *State v. D.A.R.*, 752 S.W.2d 910 (Mo. App.1988), and *State v. Kitson*, 817 S.W.2d 594 (Mo.App.1991). These cases are not persuasive because they deal, in general, with evidence of a defendant's uncharged illicit sexual conduct to show the defendant has a propensity for the type of sexual misconduct with which he is charged. *Kitson* at 598–99; *D.A.R.* at 912–13.

Here, the evidence was offered to show a witness had a propensity to engage in anal intercourse, and such witness had both the motive and opportunity to inflict the injuries received by Britain. Defendant's argument fails because he offered no evidence connecting Meltenberger with the crime in this case.

Evidence that another person had an opportunity or motive for committing the

crime for which the defendant is being tried is not admissible without proof that such other person committed some act directly connecting him with the crime. *State v. Easley*, 662 S.W.2d 248, 251–52 (Mo. banc 1983) (*quoting State v. Umfrees*, 433 S.W.2d 284, 287 (Mo. banc 1968)). Evidence which has no other effect than to cast bare suspicion on another is not admissible. *State v. LaRette*, 648 S.W.2d 96, 103 (Mo. banc 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). Defendant's suggestion that Meltenberger sodomized Britain ignores his own admissions of mistreatment of the baby.

The trial court determined the letters offered were irrelevant and we agree. The trial court has broad discretion in ruling questions of relevancy of evidence. We do not interfere with the trial court's ruling absent a clear showing of abuse of that discretion. *D.A.R.*, 752 S.W.2d at 912. Defendant has made no such showing.

### V.

In this point, Defendant claims the trial court erred in giving MAI–CR 3d 302.04, which defines reasonable doubt. Defendant insists that the definition allowed the jury to convict on proof less than "beyond a reasonable doubt." The definition given in this instruction has been repeatedly approved and challenges on appeal denied. *State v. Griffin*, 818 S.W.2d 278, 282 (Mo. banc 1991); *State v. Twenter*, 818 S.W.2d 628, 634 (Mo. banc 1991). This point is denied.

#### *APPEAL NO. 18002 (Postconviction Relief)*

Defendant filed a timely pro se motion for postconviction relief under Rule 29.15, Missouri Rules of Court (1991). Appointed counsel filed an amended motion, and an evidentiary hearing was held December 11, 1991. The motion court entered findings of fact and conclusions of law denying Defendant's motion. Notice of Appeal was filed February 26, 1992. The appeal was consolidated with Defendant's direct appeal pursuant to Rule 29.15(*l*).

Defendant has failed to brief any issues regarding the denial of his Rule 29.15 motion. Having raised no claim of error regarding such denial, Defendant's appeal is abandoned. *State v. Gillispie*, 790 S.W.2d 519, 520 (Mo.App.1990).

Defendant's appeal from denial of his Rule 29.15 motion (No. 18002) is dismissed. The judgment of the trial court is affirmed in Defendant's direct appeal (No. 17402).

FLANIGAN and PREWITT, JJ., concur.