**STATE of Missouri, Respondent,**

v.

**Kenneth MOGAN, Appellant.**

No. 19344.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 27, 1995.

Samuel J. Short, Jr., Stockton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Kocot, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

A jury found Defendant, Kenneth Mogan, guilty of sale of more than five grams of marijuana, § 195.211, RSMo Cum.Supp.1989, and assessed punishment at five years' imprisonment. The trial court entered judgment per the verdict.

Defendant appeals. His sole point relied on avers the trial court erred in that the verdict-directing instruction was not patterned on MAI–CR 3d 304.04 (criminal responsibility ·for another's conduct). Defendant maintains the evidence indicated one James Reeder, not Defendant, was the marijuana seller.

■ Before an instruction may be submitted to the jury, there must be a basis for it in the evidence. *State v. Reichert,* 854 S.W.2d 584, 603[50] (Mo.App.S.D.1993). That is, an instruction must be based on substantial evidence and reasonable inferences. *State v. Smith,* 806 S.W.2d 119, 121[4] (Mo.App.E.D. 1991). An instruction should not be given in absence of evidence to support it. *State v. Wilhelm,* 774 S.W.2d 512, 517[4] (Mo.App. W.D.1989).

The State's evidence on the identity of the seller came exclusively from the testimony of Dale Melugin. On February 12, 1992, Melugin, a commissioned deputy sheriff of Barton County, was employed as an undercover agent by the Southwest Missouri Major Case Squad Drug Enforcement Task Force, a joint operation of the sheriffs' offices of Barton, Cedar, and St. Clair Counties, and the police departments of Lamar, Stockton, and El Dorado Springs.

Melugin testified that around 8:15 or 8:30 p.m., that date (February 12) he arrived at Parkside Lounge in El Dorado Springs. Defendant, whom Melugin had seen before but never met, was there. Melugin began playing pool with several people, including James Reeder. Reeder asked Melugin if he would like to go to Reeder's "trailer" and "get high." Melugin thereupon asked Reeder if Reeder could purchase Melugin some marijuana. Melugin gave Reeder $50.

Reeder left the pool table and walked to the bar. After "30–45 seconds," Reeder returned to the pool table. Reeder and Melugin, accompanied by Defendant, then left the lounge.

The trio entered Melugin's automobile. With Melugin driving, Reeder in front, and Defendant in the back, the trio rode to Reeder's nearby trailer. There, they were joined by three other men from the lounge.

Melugin recounted that while they sat at the kitchen table, Defendant "took out a bag of marijuana, rolled up a joint, a marijuana cigarette, and lit it up and passed it

around...." Asked what happened next, Melugin testified, "[Defendant] asked if anybody else wanted any marijuana, that it was good marijuana, and it was only $45.00 a quarter, and he didn't want to be making a bunch of trips tonight."

Melugin told Defendant he (Melugin) would "like to go ahead and get another bag of marijuana." Defendant said "okay," and Melugin gave Defendant $50.

At that point, Reeder asked Melugin if he (Reeder) could use Melugin's automobile. Melugin gave Reeder the keys; Reeder and Defendant left the trailer.

Reeder and Defendant returned about 20 minutes later. Melugin was seated at the kitchen table. Defendant walked to the table, sat down, and placed two "sandwich baggies" containing marijuana on the table near Melugin. As Melugin picked up the marijuana, Defendant gave Melugin a $10 bill. Melugin explained to the jury, "[That] would have been the change from ... the first $50.00 that I had gave Jim Reeder, plus the $50.00 that I had gave [Defendant], which would have been $5.00 that they owed me for each one for my change, which would have been $10.00."

Melugin eventually drove Reeder and Defendant back to Parkside Lounge.

Defendant presented one witness—himself. He admitted being at Parkside Lounge on the night in question. Reeder (a cousin of Defendant) was also there. According to Defendant, Reeder invited him to go to Reeder's trailer and "drink a beer." Defendant agreed.

Defendant testified Reeder left the lounge with Melugin. Those two, but not Defendant, rode to the trailer in Melugin's automobile. Defendant avowed he walked to the trailer with three other men.

Defendant denied receiving money from Melugin. Defendant admitted leaving the trailer with Reeder, but explained he did so because Reeder was going to a friend's house and invited Defendant to accompany him. Defendant testified he remained in the automobile while Reeder was inside the friend's house, that Reeder said nothing about drugs, and that when Reeder and he returned to the trailer, Reeder "threw out a couple of bags of marijuana on the table." Defendant denied handling the bags, denied rolling and smoking a marijuana cigarette, and denied handing Melugin any money. Defendant added, "I made a point to get out of there just as soon as possible."

■ The verdict-directing instruction given by the trial court (Instruction 5) was patterned on MAI–CR3d 325.04 and read, in pertinent part:

"If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about February 12, 1992, in the County of Cedar, State of Missouri, the defendant sold more than 5 grams of marijuana, a controlled substance, to Dale Melugin, and

Second, that defendant knew or consciously disregarded a substantial and unjustifiable risk that the substance he sold was marijuana, a controlled substance,

then you will find the defendant guilty of selling more than 5 grams of marijuana.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

. . . . "

At Defendant's request, the trial court gave Instruction 7, patterned on MAI–CR3d 310.08, which read:

"The presence of a person at or near the scene of an offense at the time it was committed is alone not sufficient to make him criminally responsible for the offense, although his presence may be considered together with all of the evidence in determining his guilt or innocence."

Defendant's theory of error, as we fathom it, is based on three assumptions:

1. Because Defendant was present when Reeder sold the two bags of marijuana to Melugin, the trial court correctly gave Instruction 7 as requested by Defendant.

2. Because the trial court gave Instruction 7, the verdict-directing instruction (Instruction 5) should have been patterned on MAI–CR3d 304.04.[1]

3. Because Instruction 5 was not patterned on MAI–CR3d 304.04,[2] Defendant is entitled to reversal.

Paragraph 4 of the Notes on Use following MAI–CR3d 304.04 reads:

> "This is the modification of the verdict director form for use when liability is based on being criminally responsible for the conduct of another. The difference between this verdict director form and the normal MAI–CR3d 304.02 is that this provides for the conduct of the crime being ascribed to a person or persons other than the defendant."

As we have seen, the State's evidence showed Melugin bought two bags of marijuana on February 12, 1992. He negotiated the first buy with Reeder at Parkside Lounge and paid Reeder $50 there. Melugin negotiated the second buy with Defendant at Reeder's trailer and paid Defendant $50 there. When Reeder and Defendant returned to the trailer after departing in Melugin's automobile, it was Defendant who placed the two bags of marijuana on the table by Melugin and gave him the $10 "change."

The State presented uncontradicted evidence that the weight of the marijuana in each bag exceeded five grams. Consequently, each buy, independent of the other, constituted a sale of more than five grams of marijuana.

The State's evidence showed Defendant was the seller in the second buy. The State did not assert Defendant was criminally responsible for anyone else's conduct in that buy.

Defendant's evidence was that he was not involved in either buy. He swore he received no money from Melugin, had no knowledge of any marijuana until Reeder threw the bags on the table, and never handed Melugin any money.

Thus, there was no evidence to support a theory that, as to the second buy, Defendant was criminally responsible for the conduct of another. That being so, it is clear from paragraph 4 of the Notes on Use following MAI–CR3d 304.04, quoted *supra*, that the verdict-directing instruction in the instant case was not required to be patterned on 304.04.

■ Defendant's premise that he was entitled to Instruction 7 (MAI–CR3d 310.08) because he was present when—according to him—Reeder sold the marijuana to Melugin is wrong. Paragraph 2 of the Notes on Use following MAI–CR3d 310.08 reads, in pertinent part:

> "This instruction should be given only if the verdict directing instruction is patterned after MAI–CR 3d 304.04 and if requested in proper form either by the defendant or by the state...."

*State v. Lowe–Bey*, 807 S.W.2d 132 (Mo. App.E.D.1991), cited by Defendant, is contrary to, not supportive of, his position. *Lowe–Bey* explains that paragraph 2 of the Notes on Use following MAI–CR3d 310.08, quoted *supra*, precludes the use of that instruction except in conjunction with a verdict-directing instruction patterned on MAI–CR3d 304.04 relating to the accused's responsibility for the conduct of another person. 807 S.W.2d at 136.

Defendant has it backward. He says that because the trial court gave MAI–CR3d 310.08 (Instruction 7), the trial court was required to give a verdict-directing instruc-

1. Defendant was tried December 14, 1993. On that date, the version of MAI–CR 3d 304.04 in effect was the version dated "1–1–87." By order of the Supreme Court of Missouri dated July 14, 1994, a new version of MAI–CR 3d 304.04 took effect October 1, 1994. Pages XXVII–XXXIX, Vol. 878–879 S.W.2d Missouri Cases. References to MAI–CR 3d 304.04 in this opinion are to the "1–1–87" version.

2. MAI–CR 3d 304.04 begins:

> "A person is responsible for his own conduct and he is also responsible for the conduct of (another person) (other persons) in committing an offense if he acts with (him) (them) with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other person(s) in committing it.
> ...."

tion patterned on MAI–CR3d 304.04. As explained above, the rule is just the opposite. If the trial court gives a verdict-directing instruction patterned on 304.04, the trial court should, if requested by either side, give 310.08.

Because the verdict-directing instruction given by the trial court in the instant case was not (nor should it have been) patterned on 304.04, Defendant was not entitled to Instruction 7 (310.08). However, inasmuch as the trial court gave Instruction 7 at Defendant's request, Defendant cannot complain about it. *State v. Preston,* 673 S.W.2d 1, 9[21] (Mo. banc 1984), *cert. denied,* 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984).

Judgment affirmed.

PREWITT and PARRISH, JJ., concur.