STATE of Missouri, Respondent,

v.

William H. COTTRELL, Appellant.

William H. COTTRELL,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 63420, 67406.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 21, 1995.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary Moulton Bryan, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

William Cottrell appeals convictions for second degree murder and armed criminal action and a denial for post conviction relief under Rule 29.15 after a hearing. He was sentenced as a prior and persistent offender to life imprisonment for second degree murder and a consecutive ten year sentence for armed criminal action. We affirm.

The state proved the following: on April 8, 1991, Tammy Fister, Steve Patterson, Charles Vance and Skip Shipley drove to St. Louis to work. After work all four went to several bars. At one of the bars, Vance saw Cottrell, who had been incarcerated with him at the Farmington Correctional Center. Vance introduced Cottrell to the rest of the group and invited him to stay at Fister's apartment in Arnold, Missouri, with the understanding they would drive him back to St. Louis the following morning. Cottrell agreed and left with Shipley, Vance, Fister and Patterson.

When they arrived at Fister's apartment, they drank more beer and talked. Shipley decided to return home and he offered Cottrell a ride back to St. Louis. Cottrell declined. He chose to ride back in the morning.

Fister, Vance, Patterson and Cottrell went to another bar. They drank more beer and played pool. Patterson did not feel well, so he returned to Fister's apartment. Vance, Fister and Cottrell went to a party and drank still more beer.

The three returned to find Patterson sleeping on the couch without clothing. Fister covered him. The three went into the kitchen and ate sandwiches and drank more beer. Fister left the dishes on the counter, including a butcher knife. Fister told Cottrell he could sleep on the floor or in the children's bedroom. Fister and Vance went upstairs to their bedroom to sleep.

In the early morning hours, Cottrell went upstairs, three times, waking Vance and Fister. He demanded they drive him back to St. Louis. Vance told him to wait until the morning because he was too intoxicated to drive. Cottrell made threatening statements and went back downstairs.

Fister and Vance awoke when they heard Patterson yelling "... get up, get up, he got me, he stabbed me...." Patterson stumbled into the upstairs bedroom, running into the walls. He was "squirting" blood everywhere. Moments later, Patterson fell face down into a closet and died immediately thereafter.

Fister and Vance then saw Cottrell in the doorway. Fister said "my god, what did you do to him? You stabbed him, you stabbed him, what did you do." Cottrell pulled out the butcher knife still dripping with blood and demanded the car keys. He attempted to swing the knife at Vance and Fister saying, "I am killing every one of you ... just like I just killed that faggot." Vance then threw the keys at Cottrell. Cottrell immediately drove off.

Cottrell stabbed Patterson seven times. The fatal wounds were in the chest area and leg. The state presented several graphic photographs taken during the autopsy and at the crime scene.

Cottrell introduced evidence of self-defense. He claimed Patterson went into the kitchen, picked up the knife, and began attacking him after Cottrell called him a "fag" and ordered him to put on some clothes. A jury rejected the defense and found him guilty of both counts.

Cottrell argues the trial court abused its discretion in admitting "cumulative, repetitious, gruesome, and unduly inflammatory" photographs of the deceased and a videotape of the crime scene. The disputed photographs are identified as state's exhibits 19, 20, 21, 57, 59, 62, and 64.

■ The trial court is vested with broad discretion in admitting photographs. *State v. Feltrop*, 803 S.W.2d 1, 10 (Mo. banc 1991). Photographs are relevant if they depict the nature and location of wounds, the identity of the victim, the cause of death, and refute the defendant's theory the victim was the aggressor and stabbed by defendant in self-defense. *See State v. Guinan*, 665 S.W.2d 325, 331 (Mo. banc 1984). The photographs are admissible if they tend to aid the jury in better understanding the testimony and the elements in the state's case. *State v. Simpson*, 908 S.W.2d 839, 842 (Mo.App.S.D. 1995).

■ State's exhibits numbers 19 and 20 depict, at different angles, Patterson's body face down in the closet with excessive blood smears on the closet door. State's exhibit 21 is a close-up picture of the body in the closet. All three of these exhibits describe the crime scene and the location of the body.

State's exhibits numbers 57, 59, 62, and 64 represent blown-up autopsy photographs. Each photograph depicts a different stab wound on Patterson's body. Further, the medical examiner used his finger to show the "considerable depth" of the wounds and the angle the knife penetrated Patterson's body. By using state's exhibit number 57 which depicts the chest wounds, the medical examiner testified the wound was deep enough to cut a large artery. .

State's exhibit number 62 shows Patterson's massive back wound. The medical examiner testified the knife hit the rib cage, probably causing Cottrell's hand to slip over the blade of the knife and cutting his hand. This testimony is significant because it refutes Cottrell's self-defense theory; Cottrell claims he cut his hand trying to get the knife from Patterson while they were wrestling.

The medical examiner also testified, using state's exhibit number 64, the stab wound in

Patterson's leg severed a "major blood vessel," causing "gushing type" hemorrhaging. The examiner opined the cause of death was due to the wound in the left chest and the wound in the lower right leg.

■ The photographs assisted the medical examiner's testimony, they dispute Cottrell's self-defense theory, they describe the location and nature of the wounds and the cause of death. Photographs may be gruesome and shocking due to the brutality of the crime. *See State v. Feltrop*, 803 S.W.2d at 11. However, "[d]efendants may not so easily escape the brutality of their own actions; gruesome crimes produce gruesome, yet probative, photographs." *Id*. Further, they are not unduly numerous or repetitive. The trial court did not abuse its discretion in admitting the photographs in question.

■ Cottrell also challenges the admission of a videotape which portrays the crime scene. It shows the first floor where the attack originated. It follows the trail of blood up the stairs, and ends in the bedroom where Patterson collapsed and died. The videotape corroborates the witnesses' testimony and shows where the attack began. Similar to photographs, the trial court has a broad discretion in admitting a videotape. We find no abuse of discretion in admitting the videotape. Point denied.

■ Cottrell next contends the trial court erred in denying his Rule 29.15 motion. Our review of a trial court's decision on a Rule 29.15 motion is limited to whether the findings and conclusions of the lower court are clearly erroneous. Rule 29.15(j). We will reverse the decision only if we are left with a definite and firm impression a mistake has been made. *State v. Parker*, 886 S.W.2d 908, 929 (Mo. banc 1994). To prevail on an ineffective assistance of counsel claim, movant must show his attorney's performance fell below the customary skill and diligence required by a reasonably competent attorney and that he was thereby prejudiced. *Id*.

■ Cottrell specifically challenges his attorney's failure to object to Instruction No. 6, patterned after MAI–CR3d 310.50. Instruction No. 6 reads:

You are instructed that an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct. Cottrell's argument is without merit. Before addressing the legal argument, we find Cottrell did not prove the degree of his intoxication nor did he show the intoxication preempted the requisite intent for his defense. His own evidence would support a finding he was not intoxicated. Thus, the submission of the now discredited instruction had an insignificant impact on his case.

Returning to his argument, Cottrell relies on an opinion of our Missouri Supreme Court in *State v. Erwin*, 848 S.W.2d 476, 484 (Mo. banc 1993) which held this instruction violates due process because it relieved the state of its burden of proving requisite mental intent for the charged offenses. It further held the ruling shall apply to future cases or to cases subject to direct appeal where the issue is preserved. *Id.* Neither applies to the case at hand.

Cottrell was tried before the opinion in *Erwin*. Cottrell was tried from December 14, 1992 to December 17, 1992. *Erwin* was decided by the Missouri Supreme Court February 23, 1993. The MAI–CR3d 310.50 instruction was available at the time of Cottrell's trial. *See State v. Parker*, 886 S.W.2d at 923. Defense counsel testified he became familiar with *Erwin*, but not until after trial. Cottrell's claim depends on his counsel's failure to predict the instruction would be held improper. Failure to predict a change in the law does not render counsel ineffective. *State v. Parker*, 886 S.W.2d. at 923. Trial counsel's performance is evaluated based on the law existing at the time of trial. *Id.* It is not reasonable to expect defense counsel to object to the instruction, nor is he expected to be clairvoyant. The trial court did not clearly err in denying Cottrell's motion for post conviction relief. Point denied.

We affirm.

REINHARD, P.J., and WHITE, Special Judge, concur.