**STATE of Missouri, Plaintiff–Respondent,**

v.

**Rock D. GORMAN, Defendant–Appellant.**

**Rock D. GORMAN, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

Nos. 20070, 20996.

Missouri Court of Appeals, Southern District, Division One.

March 11, 1997.

---

Ellen H. Flottman, Asst. Public Defender, Columbia, for defendant–appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Joanne E. Joiner, Assistant Attorney General, Jefferson City, for plaintiff–respondent.

BARNEY, Presiding Judge.

Rock D. Gorman (Defendant) appeals from a jury verdict finding him guilty on eleven felony counts. He was convicted on December 15, 1994, of assault of a law enforcement officer in the second degree, § 565.082, RSMo Cum.Supp.1993; two counts of kidnaping, § 565.110, RSMo 1986; robbery in the first degree, § 569.020, RSMo 1986; two counts of endangering the welfare of a child in the first degree, § 568.045, RSMo Cum. Supp.1993; rape, § 566.030, RSMo Cum. Supp.1993;[1] sodomy, § 566.060, RSMo Cum.

---

1. Defendant's rape conviction was later vacated by the trial court because of an error in the sentencing guidelines of the rape instruction. However, this has no bearing on the present appeal.

Supp.1993; and three counts of armed criminal action, § 571.015, RSMo 1986. He was sentenced to consecutive terms of imprisonment in the Department of Corrections totaling 610 years.

Movant also appeals the denial of his Rule 29.15 motion after an evidentiary hearing. We have consolidated the appeals.

On May 7, 1994, Defendant went to the house of his former girlfriend (Sandy)[2] carrying a sawed-off shotgun. When he arrived, he found Sandy's son-in-law (Brad) watching Sandy's five children while she was at a meeting. Defendant went through every room of the house looking for Sandy before returning to demand the keys to Brad's truck.

Defendant then told two of Sandy's daughters, T.G., age 13, and C.G., age 18 months, that they were going with him. Brad and T.G. protested but Defendant pointed the shotgun at the girls and insisted they go with him. Before leaving the house, Defendant took all of the headsets to the phones. As he left he told Brad that if he called the police, Sandy would never see the two children again.

Defendant drove to where his car was parked and the three of them got into the car. Defendant drove for approximately thirty minutes then stopped the car in the woods near a creek. Defendant ordered T.G. to get into the back seat and take her clothes off. He told T.G. that it was her mom's fault that he was doing this and that he would hurt C.G. if she did not do what he said. Defendant then took his clothes off and inserted his penis twice into T.G.'s vagina. Defendant put his finger in her vagina and made T.G. put her mouth on his penis three or four times. When Defendant was finished, T.G. put her clothes back on and crawled back into the front seat.

Defendant continued to drive until he stopped at a house to ask for directions. The house where he stopped was that of Mark Aleshire, an off-duty investigator for the Lawrence County Sheriff's office. When Defendant left, Aleshire called the dispatcher to inquire as to whether the vehicle Defendant was driving was the vehicle that was being sought and had been the subject of an earlier broadcast from the Sheriff's office. Upon receiving confirmation that it was, Aleshire followed Defendant in his patrol car. When he caught up with Defendant, a high speed chase ensued which eventually involved more than ten law enforcement vehicles joining in the chase.

As Corporal Gary Lutes attempted to pass Defendant, he struck Corporal Lutes' car, forcing him into the ditch. Corporal Lutes regained control of his vehicle and was successful in passing Defendant. Once in front of him, Corporal Lutes attempted to slow down to 80 miles per hour, in an attempt to keep Defendant from passing him. Defendant then accelerated and rammed the back of Corporal Lutes' patrol car, causing the car to slide across the highway, off the shoulder, spin around 180 degrees, go into a ditch and hit a rock bluff. Corporal Lutes suffered cuts along his right eye requiring six stitches, a black eye and he had sore muscles for about one week.

Throughout the chase, Defendant was making erratic passes, running cars off of the road, failing to stop at red lights, exceeding the speed limit by driving as fast as 100 miles per hour and passing through police roadblocks. He held the shotgun to T.G.'s head throughout the chase. One officer testified that when he got close to Defendant's car, Defendant would point the shotgun at him.

At one point, Defendant blew a tire on his car but he still refused to stop. He eventually exited Interstate 44 at the city of Springfield, Missouri. Officers chased him through the city until smoke began to pour from under the hood and around the vehicle. When the car stopped, T.G. and C.G. exited the car and ran to the police.

### No. 20070—Direct Appeal

Defendant raises two points in his direct appeal. First, he asserts that the trial court plainly erred in submitting Instruction No. 7, the lesser included offense of assault of a law

---

2. We use the first names and initials of the parties involved to protect the identities of the victims and for the sake of clarity. We mean no disrespect in doing so.

enforcement officer in the second degree, to the jury. Defendant asserts that the instruction *his trial counsel tendered to the court* allowed the jury to convict Defendant of assault of a law enforcement officer in the second degree if they found Defendant had "knowingly caused physical injury" to the victim by "recklessly failing to prevent a collision with a patrol car." He argues that this allowed the jury to find Defendant guilty based upon a lower mental state ("recklessly" failing to prevent), rather than that required by statute ("knowingly" causing physical injury), all contrary to the requirements of MAI–CR 3d 319.34. Second, Defendant cites error in the trial court's admission of a photographic slide of the victim's pubic area and its subsequent viewing by the jury. Defendant claims that the prejudice of using this photograph outweighed its probative value.

In review of his first point, the portion of Instruction No. 7 about which Defendant complains reads as follows:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

> First, that on or about May 7, 1994, in the County of Lawrence, State of Missouri, the defendant *knowingly* caused physical injury to Corporal Gary Lutes by means of a dangerous instrument by *recklessly* failing to prevent a collision with a patrol car occupied by Gary Lutes....(Emphasis added.)

■ However, Defendant was the party submitting the instruction. Having proffered the instruction himself, Defendant is not in a position to complain. *State v. Leisure*, 796 S.W.2d 875, 877 (Mo. banc 1990). As a general rule a defendant cannot complain of an instruction given at his request. *State v. Chambers*, 891 S.W.2d 93, 105 (Mo. banc 1994); *State v. Mogan*, 891 S.W.2d 867, 871 (Mo.App.1995). "Generally, a defendant may not obtain a new trial on the basis that the court submits an instruction offered by de-

fendant." *State v. Giles*, 926 S.W.2d 227, 228 (Mo.App.1996).[3]

Defendant cites *State v. Albanese*, 920 S.W.2d 917 (Mo.App.1996) for the proposition that a trial court must submit a proper instruction on its own motion, even if an incorrect instruction is submitted by counsel. However, the *Albanese* case involved a self-defense instruction which is expressly required to be given when supported by the evidence, *even if not requested by the defendant*. *Id.* at 923; *see also* note two of MAI–CR 3d 306.06. No such express requirement exists in MAI–CR 3d 319.34.

Defendant acknowledges that he offered the instruction. He now requests plain error review. He is not entitled to relief. *Giles*, 926 S.W.2d at 228. Point One is denied.

In his second point, Defendant contends the trial court erred in admitting State's exhibit 15, a photographic slide of T.G.'s pubic area, in that the contents of the photograph were fully explained by the State's witness and the slide was therefore intended to inflame the passions and prejudices of the jury.[4]

■ A trial court has broad discretion in the admission of photographs. *State v. Mathis*, 927 S.W.2d 936, 938 (Mo.App.1996). Such an admission is error only when there is an abuse of that discretion. *State v. Huse*, 842 S.W.2d 579, 583 (Mo.App.1992). " 'Photographs, although gruesome, may be admitted where they show the nature and location of wounds, where they enable the jury to better understand the testimony, and where they aid in establishing any element of the state's case.' " *State v. Feltrop*, 803 S.W.2d 1, 10 (Mo. banc 1991), *cert. denied* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991); *Huse*, 842 S.W.2d at 584. "Photographs may be gruesome and shocking due to the brutality of the crime. However, '[d]efendants may not so easily escape the brutality of their own actions; gruesome crimes produce gruesome, yet probative, photo-

---

3. The trial court also gave an instruction on the lesser included offense of assault of a law enforcement officer in the third degree (§ 565.083 RSMo Cum.Supp.1993) as submitted by Defendant.

4. Defendant contends that although the photograph was used by the State to support the rape charge, the entire trial was tainted by its admission.

graphs.'" *State v. Cottrell,* 910 S.W.2d 814, 816 (Mo.App.1995) (citation omitted).

State's exhibit 15 was used in conjunction with the testimony of Dr. William Steinmetz, the physician that performed the SAFE exam on T.G. after the incident. He testified that her hymen was torn, as were both sides of her vagina and tissue toward the rectum. Defendant contends that because Dr. Steinmetz fully explained T.G.'s injuries, there was no reason to admit the photograph. However, a photograph will not be found inadmissible simply because other evidence described what was depicted in the photograph. *State v. Reynolds,* 837 S.W.2d 542, 546 (Mo.App.1992). The use of the photograph in this case aided Dr. Steinmetz in explaining T.G.'s injuries to the jury and the trial court did not abuse its discretion in allowing the admission of the exhibit. Defendant's point is without merit.

The judgment of the trial court in case No. 20070 is affirmed.

### Postconviction Relief—No. 20996

Rock D. Gorman (Movant) appeals from the denial of his Rule 29.15 motion after an evidentiary hearing. He asserts that trial counsel was ineffective in failing to request a recess in order for Movant to regain his composure during cross-examination.

Appellate review of the motion court's decision is limited to a determination of whether the findings and conclusions are clearly erroneous. Rule 29.15(k), Missouri Rules of Criminal Procedure (1997) [5]; *State v. Driver,* 912 S.W.2d 52, 54 (Mo. banc 1995). A judgment will be found clearly erroneous if, upon review of the entire record, this Court is left with a definite and firm impression that a mistake has been made. *Gallimore v. State,* 924 S.W.2d 319, 320 (Mo.App. 1996).

To prevail on a claim of ineffective assistance of counsel, Movant must show that (1) counsel failed to provide reasonably effective assistance and that (2) Movant was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064,

80 L.Ed.2d 674 (1984); *State v. Gray,* 887 S.W.2d 369, 380–81 (Mo. banc 1994), *cert. denied* — U.S. ——, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). Absent a showing to the contrary, counsel is presumed to have provided effective assistance. *Wilhite v. State,* 845 S.W.2d 592, 594–95 (Mo.App.1992). To satisfy the prejudice aspect of the two part test, Movant must show there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Gray,* 887 S.W.2d at 381.

There are two incidents about which Movant complains. During the State's cross-examination of Movant, the following exchange took place:

Q. [By the State]: Now, Mr. Gorman, when you got to the site by the creek, you admit that you were out there by the creek?

A. I think I would like to stop talking at this time. I don't think I can handle this anymore.

Q: Well, I'm going to have to ask you—do want a break?

A: No, I just don't think I can handle it anymore.

Q: Well, you started this.

A: I know that.

Q: Answer my questions, I've got a right to ask you questions.

A: I'm sorry, it's killing me.

THE COURT: Answer the questions, Mr. Gorman.

Movant was upset and crying during this particular exchange. Movant clearly responded that he did not want a recess. The motion court stated the following in its findings of facts and conclusions of law:

A full and complete reading of the transcript of the cross-examination of the Movant indicates that he just did not like to answer the questions posed by the prosecuting attorney, and, at times, simply indicated that he did not want to answer any further questions. Furthermore, his answers were not responsive and he had to be admonished on several occasions by the

---

5. Formerly Rule 29.15(j).

Court to respond to the prosecuting attorney's questions.

The second incident occurred later in the cross-examination:

A: Is this going to last much longer?

Q: Do you need a break? I'll be glad to give you a brake [sic].

A: Yes, please.

THE COURT: Let's proceed.

In this instance, the State began to request a recess and the court said that the cross-examination would proceed.

A trial court has considerable discretion in determining when to grant a recess during a trial. *State v. Fleer*, 851 S.W.2d 582, 594 (Mo.App.1993); *State v. Oplinger*, 847 S.W.2d 156, 157 (Mo.App.1993). Furthermore, a claim of ineffective assistance of counsel will be unsuccessful if it is based upon the failure of defense counsel to pursue a course of action which would have been rejected by the trial court. *State v. Leisure*, 838 S.W.2d 49, 54 (Mo.App.1992).

Movant has failed to demonstrate that counsel was ineffective in failing to request a recess. This Court cannot say that the motion court's findings of fact and conclusions of law were clearly erroneous.

The judgment of the motion court in Case No. 20996 is affirmed.

GARRISON and PREWITT, JJ., concur.