

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
v. )    No. SD37173
)    Filed: July 28, 2023
MITCHELL BRUMFIELD, )
)
    Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF MISSISSIPPI COUNTY

Honorable R. Zac Horack, Special Judge

### AFFIRMED

Mitchell Brumfield (Defendant) appeals from his convictions for abuse or neglect of a child and second-degree murder. *See* § 568.060; § 565.021.[1] Defendant presents two points on appeal. He contends the trial court abused its discretion by: (1) admitting autopsy photographs of the victim as evidence; and (2) permitting a prosecution witness to use a doll to demonstrate his testimony. Because we find both points to be without merit, we affirm.

### Factual and Procedural Background

On March 29, 2018, police officers in Charleston, Missouri, responded to a call that an eight-month-old infant (Victim) was "not breathing" and "unresponsive." When police

---

[1] All statutory references are to RSMo (2016), unless otherwise specified.

arrived at the home owned by Victim's mother, they found Defendant holding Victim in his arms. Victim was transported to a hospital where she died the next day.

Defendant was charged with abuse or neglect of a child and second-degree murder. A jury trial was held beginning on April 28, 2021.

The prosecutor called Dr. Russell Deidiker as a medical expert witness. He had performed the autopsy of Victim and testified regarding the results of that autopsy. He explained the nature of Victim's injuries, which included significant damage to the brain and problems with several other organs that resulted from the brain injury. Dr. Deidiker described what actions could and could not have caused the injuries to Victim. During Dr. Deidiker's testimony, the prosecutor sought to admit seven photographs of the exterior of Victim's body taken during the autopsy. Over defense counsel's objection, the trial court admitted the photographs.

The prosecutor also presented testimony from police officer Matt Lindenmeyer (Officer Lindenmeyer). He had been an officer for approximately 20 years. He was the Investigations Manager for the Missouri State Technical Assistance Team (STAT). This agency, with the powers of arrest, provides law enforcement officers with "technical investigative assistance to multi-disciplinary team regencies across the State of Missouri." STAT also provides training and best practices for child abuse investigation throughout Missouri. Officer Lindenmeyer had received over 1,000 hours in specific law enforcement training, most of which specialized in child abuse investigations. He had investigated hundreds of incidents, at least 12 of which involved the death of a child.

Officer Lindenmeyer was asked to investigate this case by the Charleston Department of Public Safety. The officer spoke with Dr. Deidiker and read the autopsy report. He conducted one interview with Victim's mother and two interviews with

Defendant. During Officer Lindenmeyer's testimony, he described these interviews to the jury.

The prosecutor then asked Officer Lindenmeyer, based on his education and experience, whether he knew what types of movements would cause the injuries that Victim had suffered. Defense counsel objected on the ground that Officer Lindenmeyer was not a doctor. At the trial court's request, the prosecutor laid the following additional foundation for such testimony:

> Q. Sir, can you give us a brief synopsis of your education in investigating traumatic brain injuries in children?
>
> A. Sure. I've been through the medical-legal death investigation school for specifically abusive head trauma, and toddler infant deaths. I'm actually an instructor for the Missouri [STAT] for best practices for child death investigation. I also instruct for the Missouri State Highway Patrol, the Missouri Office of Prosecution Services, Missouri Kids First, and a multitude of other agencies regarding abusive head trauma cases.
>
> Q. Okay. And in your training to be an instructor and giving instructions on this, you have achieve[d] relative knowledge as to what types of things would cause traumatic brain injuries in children?
>
> A. Yes, sir. You do not have to be a medical doctor to understand abusive head trauma and how it occurs.
>
> Q. And approximately how many seminars have you conducted on it?
>
> A. I've taught at global, State and national levels regarding the child abuse topic.

After this testimony was adduced, the trial court overruled the objection. Officer Lindenmeyer then explained how a baby's brain can be injured as the result of a shaking mechanism called a "coup-contrecoup." Using a doll, he demonstrated what actions could cause a coup-contrecoup injury. The entirety of the demonstration is recorded on 2/3 of one page of the transcript. During cross-examination, defense counsel did not ask any questions about the demonstration.

3

The jury found Defendant guilty on both counts. Defendant was sentenced to 15 years on Count 1 and life imprisonment on Count 2. The trial court ordered the sentences to be served consecutively. This appeal followed.

**Standard of Review**

Both of Defendant's points on appeal challenge the admission of evidence by the trial court, which we review for an abuse of discretion. *State v. Brandolese*, 601 S.W.3d 519, 533 (Mo. banc 2020). A trial court abuses its discretion with respect to the admission of evidence only when the ruling is:

> clearly against the logic and circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

*State v. Brown*, 939 S.W.2d 882, 883-84 (Mo. banc 1997); *Brandolese*, 601 S.W.3d at 533. Additionally, we review the trial court's ruling for prejudice, not mere error, and we will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *Brandolese*, 601 S.W.3d at 533-34.

**Discussion and Decision**

*Point 1*

Defendant contends the trial court abused its discretion by admitting the autopsy photographs of Victim. He argues that the photographs were not legally relevant because they "served no discernible useful, evidentiary purpose" and were "needlessly inflammatory."

The Supreme Court of Missouri explained the standards for the admission of photographs as follows:

The trial court is vested with broad discretion in the admission of photographs. Photographs are relevant if they show the scene of the crime, the identity of the victim, the nature and extent of the wounds, the cause of death, the condition and location of the body, or otherwise constitute proof of an element of the crime or assist the jury in understanding the testimony. A photograph is not rendered inadmissible simply because other evidence described what is shown in the photograph. If a photograph is relevant, it should not be excluded simply because it may be inflammatory. As with other relevant evidence, a photograph should not be excluded from evidence unless its prejudicial effect is greater than its probative value. Insofar as photographs tend to be shocking or gruesome, it is almost always because the crime is shocking or gruesome.

*State v. Rousan*, 961 S.W.2d 831, 844 (Mo. banc 1998) (citations omitted).

The autopsy photographs were relevant because: (1) they showed the condition of Victim's body; and (2) they assisted the jury in understanding Dr. Deidiker's testimony. Dr. Deidiker testified that the only injuries he discovered while performing the autopsy of Victim were internal. He found several injuries that indicated significant "rotational force to the brain[.]" Dr. Deidiker referred to his autopsy report, in which he stated his opinion that Victim "died as a result of complications of closed head injury" that was "non-accidental in origin." The autopsy photographs showed the exterior of Victim's body with no visible bruising or lacerations, corroborating Dr. Deidiker's testimony that Victim died as a result of internal injuries.

The trial court's admission of the photographs was also consistent with numerous cases in which courts have found no abuse of discretion where a trial court admitted autopsy photographs that assisted testimony by a medical examiner. In *State v. Collings*, 450 S.W.3d 741 (Mo. banc 2014), our Supreme Court upheld the admission of photographs that "while gruesome, aided the pathologist in explaining the autopsy findings." *Id*. at 763. Similarly, this Court in *State v. Hartman*, 224 S.W.3d 642 (Mo. App. 2007), found no abuse of discretion in the admission of autopsy photographs which "had the legitimate purpose of

5

illustrating the pathologist's testimony for the jury[.]" *Id*. at 649-50. In *State v. Cotrell*, 910 S.W.2d 814 (Mo. App. 1995), the eastern district of this Court affirmed the admission of autopsy photographs which "assisted the medical examiner's testimony" and described "the location and nature of the wounds and the cause of death." *Id*. at 816.

Here, the autopsy photographs corroborated Dr. Deidiker's testimony that Victim died as a result of internal injuries. Although they may have been distressing, Missouri courts have repeatedly reasoned that "gruesome crimes produce gruesome, yet probative, photographs." *State v. Feltrop*, 803 S.W.2d 1, 11 (Mo. banc 1991).[2] Thus, the trial court did not abuse its discretion by admitting the photographs from Victim's autopsy. Point 1 is denied.

*Point 2*

Defendant contends the trial court abused its discretion by permitting Officer Lindenmeyer to use a doll during his testimony to demonstrate how Victim's injuries could have occurred. Defendant argues that the prosecutor "failed to lay a sufficient foundation for Lindenmeyer's testimony as a purported expert[.]" Defendant additionally argues that the demonstrative evidence was not legally relevant because it "did nothing to aid the jury's understanding of any fact or issue" in the case, and it was "solely designed to inflame the jury against [Defendant.]"

As our Supreme Court explained in *State v. Minor*, 648 S.W.3d 721 (Mo. banc 2022):

> Section 490.065.2(1) allows testimony by an expert witness "who is qualified as an expert by knowledge, skill, experience, training, or education ...." [*Id*.] "[A] qualified expert can offer testimony based on sufficient facts and reliable principles that have been reliably applied whenever such testimony

---

2 *Feltrop* was overruled on other grounds by *Joy v. Morrison*, 254 S.W.3d 885 (Mo. banc 2008).

will help the jury understand the evidence and decide the disputed issues."
*State v. Carpenter*, 605 S.W.3d 355, 360 (Mo. banc 2020).

*Minor*, 648 S.W.3d at 733 (emphasis omitted). Officer Lindenmeyer testified about how he acquired knowledge of the mechanisms that can cause traumatic brain injury through his education, training and experience. This foundation was sufficient to qualify him as an expert on that issue pursuant to § 490.065 RSMo Noncum. Supp. (2017). We also note that Officer Lindenmeyer testified after Dr. Deidiker had been called as a witness for the prosecution. Dr. Deidiker testified that he discovered bleeding in Victim's brain, as well as other injuries indicative of significant rotational force to the brain. He explained that such injuries could result from shaking, slamming, or a significant blow to the baby's head. During Officer Lindenmeyer's later testimony, he explained to the jury the coup-contrecoup mechanism by which a baby's brain can shake around its skull, leading to internal bleeding and other problems. He described the actions which can cause this mechanism, which include "shaking, slamming, and throwing." He then demonstrated one of these actions using the doll. Defense counsel had the opportunity, but did not, cross-examine Officer Lindenmeyer about any differences between the doll and an actual infant that could affect the weight the jurors should give to such testimony. Thus, the trial court did not abuse its discretion by admitting this demonstrative evidence to illustrate a type of action that can cause injury to an infant. *See* **State v. Candela**, 929 S.W.2d 852, 867 (Mo. App. 1996).

In any event, a party cannot demonstrate prejudice on appeal if the challenged evidence is cumulative to other related, admitted evidence. ***Brandolese***, 601 S.W.3d at 536. When Officer Lindenmeyer performed the demonstration with the doll, Dr. Deidiker had already described how Victim was injured and what actions could have caused the injuries. Because Officer Lindenmeyer essentially "reiterate[d] the same point[s]" as Dr. Deidiker,

7

Officer Lindenmeyer's testimony was cumulative.  *Id*.  Therefore, Defendant also has failed to demonstrate how he was prejudiced by permitting Officer Lindenmeyer to use the doll as a demonstrative aid.  Point 2 is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCUR

GINGER K. GOOCH, J. – CONCUR